[L. A. No. 1145. In Bank.—March 12, 1903.]

## STELLA BALLARD, Appellant, v. CHARLES W. NYE et al., Respondents.

FORECLOSURE OF MORTGAGE—FINDING OF PAYMENT—PRESUMPTION UPON APPEAL—CONFLICTING EVIDENCE.—In an action to foreclose a note and mortgage for a balance claimed to be due and unpaid, where the court made a general finding of payment by the mortgagor, the presumption upon appeal is not only in favor of the ultimate fact of payment found, but also that any conflict in the evidence as to probative facts was resolved by the lower court in such a manner as to support the general finding.

ID.—ADJUSTMENT OF INSURANCE MONEY—PAYMENT OF RESIDUE—RETURN OF MORTGAGE.—Where the mortgaged house was destroyed by fire, and the loss was adjusted by the insurance company between the mortgagor and mortgagee, and upon information by the mortgagor to the mortgagee of the amount made payable to the mortgagee by the insurance company, the residue was paid by the mortgagor, and the mortgage was returned to the mortgagor without any direction as to its disposal, the mortgagor had the right to assume that the mortgage was returned to him as entitled to its possession as an evidence of indebtedness for which the mortgagee had no further use.

ID.—INQUIRY OF MORTGAGOR—ANSWER OF MORTGAGEE—RESPONSIBILITY FOR COLLECTION.—Where the mortgagor, when remitting the residue to the mortgagee, inquired whether he should request the insurance company to forward the insurance money or a draft for it to the mortgagee at Los Angeles, to which the mortgagee answered that she would attend to the matter herself when she should come to San Francisco, she thereby gave the mortgagor to understand that she intended to assume all further responsibility for its collection.

ID.—COLLECTION OF INSURANCE MONEY BY ASSUMED AGENT—RATIFICATION.—Where the insurance money payable to the mortgagee alone was collected therefrom by one assuming to act as an agent of the mortgagee without authority, and the mortgagee received part of the money from such assumed agent, and looked to him for the residue, with knowledge that he had not been authorized to collect the money, and failed to make inquiry of the insurance company, or to notify the mortgagor of the non-payment of the residue, by such assumed agent, until the statute of limitations had run in favor of the insurance company against its collection therefrom,—the facts amount in law to a ratification of the assumed agency, which is equivalent to an authorized payment to the assumed agent by the insurance company, and warrants a finding of payment to the mortgagee.

ID.—IGNORANCE OF FACTS—DUTY OF INQUIRY.—Though it is the general rule that a party must have full knowledge of all material facts before the doctrine of ratification can be applied, yet ignorance of such facts can avail nothing where it is intentional and deliberate, or where the circumstances are such as reasonably to put the principal upon inquiry. Where the situation naturally and reasonably suggests that some inquiry should be made, and none is made, the person failing to make it will be deemed in law possessed of such facts as the inquiry would have disclosed.

ID.—FORMER AGENCY FOR MORTGAGOR.—The fact that the agent assuming to act for the mortgagee in the collection of the insurance money, acted formerly as agent for the mortgagor in obtaining the loan, does not alone prove any agency for the mortgagor in obtaining the insurance money, where there is no evidence to warrant an inference that he acted or assumed to act for the mortgagor in that matter.

ID.—EVIDENCE OF ASSUMED AGENCY.—Evidence is admissible, as tending to show the assumed agency for the mortgagee, of a receipt given by the assumed agent to the insurance company signed by him as attorney for the mortgagee, and of a check for the money drawn to the order of the mortgagee, and purporting to have been indorsed by the mortgagee, and by the assumed agent.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court. ·

William Mattoon, W. H. Savage, and M. C. Hester, for Appellant.

The payment to Hayford was no payment to appellant, without proof of his authority to represent her. (2 Greenleaf on Evidence, 6th ed., sec. 518.) The delivery of the check for the money did not constitute a payment, without express agreement on appellant's part to receive such check as payment. (*Brown* v. *Olmstead,* 50 Cal. 162; *Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, 21; *Steinhart* v. *National Bank,* 94 Cal. 362.[1]) Plaintiff was ignorant of the existence of the check. There is no proof that plaintiff substituted the insurance company as her debtor in lieu of the defendant, with intent to release him.

---

[1] 28 Am. St. Rep. 132.

Hunsaker & Britt, for Respondents.

The plaintiff, as mortgagee, was authorized to collect the money appropriated to her use. (*Ennis* v. *Harmony Fire Ins. Co.,* 3 Bosw. 516; *Keeler* v. *Niagara Fire Ins. Co.,* 16 Wis. 523;[1] *Frink* v. *Hampden Ins. Co.,* 45 Barb. 384.) Plaintiff ought to have known how Hayford collected the money, and in accepting payment from him without inquiry, and looking to him for further payment, she ratified his assumed agency. Ignorance which might easily be remedied by inquiry, or which is intentional or deliberate, will not defeat the principal's ratification. The court was authorized to find adoption by appellant of all the acts of Hayford. (Civ. Code, sec. 1589; Mechem on Agency, secs. 128, 129, 148; *Wilder* v. *Beede,* 119 Cal. 646, 650; *Pope* v. *Armsby Co.,* 111 Cal. 159; *Busch* v. *Wilcox,* 82 Mich. 336;[2] *Neimeyer Lumber Co.* v. *Moore,* 55 Ark. 240.) By accepting and retaining the fruits of Hayford's transaction with the insurance company, in which he assumed to act as her attorney, plaintiff adopted, and became responsible for, the instrumentalities employed by him in obtaining the money, even though she was unaware of the fraud perpetrated by him in securing it. She received the benefit and must bear the burden. (Civ. Code, sec. 3521; *Balfour* v. *Fresno etc. Co.,* 123 Cal. 395; *Gribble* v. *Columbus Brewing Co.,* 100 Cal. 67; *Mitchell* v. *Finnell,* 101 Cal. 614; *Riser* v. *Walton,* 78 Cal. 490.) If the principal elects to ratify any part of an unauthorized act he must ratify the whole of it. He cannot avail himself of it so far as it is advantageous to him, and repudiate its obligations; and this rule applies not only when his ratification is express, but also when it is implied. (Civ. Code, sec. 2311; Mechem on Agency, sec. 130.) Subsequent ratification is equivalent to a previous authority. It operates upon the transaction in the same manner as though the authority had existed originally. (*Zottman* v. *San Francisco,* 20 Cal. 96;[3] *Ralphs* v. *Hensler,* 97 Cal. 296; Mechem on Agency, sec. 167; *Cook* v. *Tullis,* 18 Wall. 332.)

LORIGAN, J.—This is an action to recover a balance of two hundred dollars with interest, claimed to be due on a

[1] 84 Am. Dec. 714.                  [3] 81 Am. Dec. 96, and note.
[2] 21 Am. St. Rep. 563.

promissory note, and to foreclose a mortgage executed by the above-named defendant and his wife to secure its payment.

The only issue in the court below was whether the amount claimed had been paid, and this was found in favor of the defendants.

From the judgment entered in their favor, and from an order denying a new trial, the plaintiff appeals. Two points are made on the appeal,—insufficiency of the evidence to justify the finding of payment, and errors of law in the admission of certain evidence.

Considering the point first made, the facts are: That in July, 1896, the note sued on was executed by defendant Nye, and the mortgage by himself and his wife in favor of plaintiff. Previous to the execution of the mortgage, Nye had procured a policy of insurance for one thousand dollars upon a house situated on the mortgaged premises, which policy was properly indorsed, the loss made payable to the plaintiff as mortgagee "as her interest may appear." He took also an additional policy on the building for one thousand dollars, payable to himself. Six months thereafter the house was destroyed by fire, and an adjustment made by the insurance company, and an allowance made in plaintiff's favor, as mortgagee, of $719.44. At this time the defendant resided in San Francisco, and the plaintiff in Los Angeles. While the insurance company was adjusting the loss, one George Hayford, also then residing in San Francisco, wrote to the plaintiff at Los Angeles, requesting her to send him the mortgage so that her interest in the property could be shown to the insurance company without the expense of getting a copy. Plaintiff did not send the mortgage to Hayford, but instead mailed it to Nye's address in San Francisco, and, as far as the record shows, its transmission was unaccompanied by any letter informing him of Hayford's request for it, or stating why she forwarded it to Nye. On the day of the adjustment by the insurance company, Nye wrote from San Francisco to the plaintiff at Los Angeles, telling her of the allowance of $719.44 made in her favor by the company, and inclosing a money-order for $30, which he stated in the letter would, with the amount allowed her in the adjustment, pay the note and mortgage in full. He also informed her in the same letter that the money allowed her in the adjustment was in the possession

of the insurance company for her, that it could not be paid to
any one but herself, and inquired whether he should request
the insurance company to send the money, or a draft for it, to
her at Los Angeles.

This letter plaintiff answered, acknowledging the receipt
of the money-order, and stating that she intended going to
San Francisco before long, and that the insurance money
could remain as it was until she did so, when she would attend
to the matter herself. In July—some three months after-
wards—plaintiff came to San Francisco with a view of getting
her money. Upon her arrival, and two or three days prior
to July 22d, she called at Hayford's office, and with regard to
those visits and subsequent transactions she testified: "I
could not get any satisfaction from him as to where my money
was or how I was to get it, until I had made two or three
calls on him. On the 22d of July, when I called at his office,
he said he would go over with me to the bank and get the
money. I did not then know where the money was, but sup-
posed it had been deposited in some bank in my name, as I
had understood from Mr. Nye's letter. Hayford took me to
the Union Trust Company's Bank and requested an officer of
the bank to transfer from his, Hayford's, account to my
account $520. I said to him that that amount was not all that
was due me, and that I wanted it all. He admitted that there
was something like $200 more due me, but made some excuse
for not having it all paid me at that time, and said the balance
would be paid me in a day or two. Nothing more has ever been
paid me by any one. I did not then understand how the
money came to be in the bank in his name instead of mine,
but I supposed that he was in some way acting for the Nyes
in paying me the money. I did not then know that he had
received the money, or a check, from the insurance company
in my name, or as my attorney. I had never authorized him
to do any business with the insurance company for me. When
I went with Hayford to the bank I supposed the money that
had been allowed me on the policy by the insurance company
had been deposited with the bank in my name." She further
testified that she knew that the money, by the terms of the
policy, was payable by the insurance company to herself;
that the money paid to her by Hayford was a part of it; that
she made no inquiry where or how he had gotten possession

of it; that she made no inquiry at any time of the company about the money, or any effort to collect from it; that she endeavored several times afterwards to collect the balance from Hayford, but he always put her off, and never paid anything more, and that she never made any demand of Nye for the payment until shortly before this suit was commenced, upwards of three years after the payment by Hayford.

It further appears that the loan for which the note sued on was given was in part negotiated by Mrs. Nye, who got part of the money. Afterwards Hayford brought appellant the note and mortgage, and she let him have the rest of the money. He was acting for the defendant Nye, with whom he was then boarding.

These are the principal undisputed facts in the case. There was some conflict in the evidence as to other facts, principally as to whether when plaintiff came to San Francisco she was directed by Mrs. Nye to see Mr. Hayford about the money; also as to whether in his letter to her Nye stated that the money allowed by the insurance company in the adjustment was retained for her by the company, or placed in a bank in her name. The letter written by Nye to her was not produced upon the trial, the plaintiff testifying that she had either lost or destroyed it.

There were no special findings in the case, the only finding made by the lower court being a general one of payment.

The presumption on appeal is not only in favor of the ultimate fact declared in the findings, but when it appears that there was a material conflict in the evidence in the court below as to probative facts essential to be found to support the ultimate fact, the further presumption obtains that such conflict was resolved by the lower court in such manner as to sustain the general finding. (*Borderre* v. *Den*, 106 Cal. 594.) Applying this rule, if it was essential to support the general finding in question here, that the lower court must have resolved this conflict in the evidence in favor of the claim of the defendant, then this court must assume that it did so, and found that no direction was given by Mrs. Nye to plaintiff; and that the letter to plaintiff from Nye contained, as both his wife and Nye testified, an explicit statement that the money was in the possession of the insurance company to be held by

CXXXVIII. Cal.—38

it for her, and contained no statement that it was on deposit in a bank.

Addressing ourselves now to the contention of appellant that the evidence does not support the finding of payment: The case in the lower court turned mainly on the point of Hayford's agency, actual or assumed, and the legal consequences flowing from its exercise as disclosed by the evidence. The evidence shows, and the lower court necessarily found, that Hayford never was in fact constituted the agent of the Nyes or either of them to procure the money from the insurance company, or make payment to the plaintiff. It is improbable that he would have been, as the record discloses that when the money on the loan in suit was handed him for the Nyes, he appropriated a considerable amount of it for his own advantage. And the lower court from the evidence could not have found that the plaintiff ever expressly authorized Hayford to collect the money from the company on her account.

The fact nevertheless is, beyond question, that assuming to be her agent he did collect it, and it was this money, or part of it, which he had in the bank when plaintiff dealt with him; and the points now to be considered are whether the facts and circumstances disclosed by the evidence warranted the lower court in concluding that plaintiff knew, when she was dealing with Hayford, the true capacity in which he had obtained the money, and dealt with him in that capacity, thus approving and ratifying the agency, or, if she did not know it, did her conduct and her dealings with Hayford amount, in law, to a ratification and sustain the finding. It is insisted by the respondents that the evidence warranted the lower court in finding in their favor on both these points.

We are not advised from the record what particular conclusions were reached by the lower court from the evidence. The general finding might be supported by a conclusion in favor of respondents on either point, though it may not become necessary for us to discuss both of them. Appellant contends that not only does the evidence not support either of these propositions, but that it fully proves that Hayford, if not actually the agent of the respondents, was at least their ostensible agent. There certainly is no evidence in the case even tending to show that he was actually their agent, nor can we perceive that there are any facts from which the lower

court could have inferred ostensible agency. As to proof of actual agency, appellant relies mainly upon her own statement that Mrs. Nye, when she called on her in San Francisco, referred her to Hayford. If this reference by his wife could bind Nye, (he alone had executed the note for which the mortgage was security,) it is sufficient to say, under the rule hereinabove announced, that the lower court in a conflict of evidence on this point must have found that no such reference was made. As to ostensible agency, this claim is predicated mainly, if not entirely, upon the fact that when the loan was negotiated Hayford in a measure acted as the attorney for the Nyes in the transaction. This was, at least, a year before the insurance company made the allowance to the appellant. It cannot be presumed, and the appellant was not warranted in assuming, from the fact alone that Hayford acted as agent in obtaining the loan, that he was also agent in making payment of it. We do not say it might not be taken into consideration with other appropriate facts in warranting such a deduction, but, of itself, we cannot accord it such controlling effect, and in this case there are no other facts which can make such a consideration pertinent.

This connection with the original loan is the only connection which the evidence shows Hayford to have ever had with the Nyes before or after it.

But it is further asserted by appellant, in proof of such claim of an ostensible agency, that to procure payment of the money from the insurance company Hayford must have been in possession of the mortgage which she sent to Nye, and the policy of insurance in her favor which was never in her possession, and must have gotten them from the Nyes.

This is but an argument from an inference. There is no evidence in the record as to who was in possession of the policy of insurance at the time the money was collected from the company, or at any other time. The plaintiff, it is true, did not have it, but it does not appear that Nye or Hayford ever had it. Neither is there any evidence that Hayford ever had the mortgage, or that it was ever presented to the insurance company, or ever left the possession of the Nyes.

All these matters might have been ascertained, if deemed necessary, on the trial, as the parties who could have testified on the subject were witnesses, and the necessity of indulging

in probabilities would have been obviated by proof of the facts. But, even if Nye had the policy and had delivered it with the mortgage to Hayford, there is no more ground for assuming that he gave it to Hayford, as his agent, to collect appellant's money, than there is in assuming that Hayford obtained it by falsely representing that he was the agent of appellant. And, considering his conduct as disclosed by the evidence, the last probability might be more safely indulged in. Aside from this, when appellant sent the mortgage to Nye she did not accompany it with any message. She did not inform him that Hayford had written for the mortgage to present it to the insurance company. She simply forwarded the mortgage to Nye's address. She might have informed him of Hayford's request, and why she preferred sending the mortgage to him rather than to Hayford, and, not having done so, she is hardly in a position to start an inference in her own favor of its delivery by Nye to Hayford, when she might have controlled its delivery by a word of explanation accompanying its transmission. Nye had a right to assume, and would be warranted in doing so, that, as the amount due her would be paid by the insurance company, she had returned the mortgage to him as an evidence of indebtedness to which he was entitled, and for which she had no further use.

We approach now the only other points on this branch of the case, whether the evidence justified the court in finding, either that the appellant knew the true capacity in which Hayford obtained the money and ratified it; or, if she did not know it, whether her conduct and dealings with him amounted in law to a ratification.

We do not deem it necessary to discuss the first point, because we are satisfied that the evidence fully warranted a conclusion favorable to respondents on the second.

It may be said, too, that a discussion of both would be of no particular benefit, because the same consideration of the evidence which warranted the trial court in finding in favor of the second could be equally applied to a favorable finding on the first.

Now, upon the matter of ratification. Appellant contends in this connection that payment to Hayford by the company was not payment to her, unless he had authority to represent her. There is no doubt of this as a legal proposi-

tion. Of course, authority must be shown, but it need not be express authority; it may be implied, and one of the recognized legal methods of proving authority is by ratification. From such proof the law implies previous authority to the same extent as if in the first instance it had been expressly conferred. The doctrine of ratification proceeds upon the theory that there was no previous authority, and that the relation of principal and agent did not in fact exist, but implies it from the acts and conduct of the parties, and when so implied, is equivalent to previous authority, and results as effectively to establish the relation of principal and agent as if the agency had been authorized in the beginning. But the general doctrine of ratification is so well understood as to need no further reference to it. While on the subject, however, it may be said, as to the character of proof from which ratification may be inferred, that it is the most frequently established by implication from the conduct and acts of the party in whose behalf the unauthorized agency was assumed, inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it. Other rules of law applicable to proof of ratification may be further considered in discussing the evidence in the case, and we shall now proceed to that discussion.

The appellant unquestionably knew that any money payable as a loss under the policy in her favor was in terms made payable to herself, and not to Nye. That fact was further impressed on her by Nye's letter advising her of the loss, and explicitly stating to her that the money was held by the insurance company for her and could be paid to no one but her, and that it was a fund set apart to her to pay the mortgage debt. She knew, too, from Nye's letter to her, that with the money-order he sent to her, and the amount allowed by the company to be paid her, that he deemed his debt to be fully paid; that Nye had never attempted to control this money, but, on the contrary, had offered to have the insurance company send it to her, which offer she declined, saying she would attend to it herself. She must have inferred that if Nye could have obtained it, he would have sent it to her when he sent the money-order. She must have inferred, too, that Nye would believe, from her declaration, that she would attend to it herself, that she intended to take all further responsibility

for its collection on herself. She must have known, as the money was payable to herself only, that if any one else had obtained it, it must have been as her agent, or purporting to be such. She knew all these things when she made her several unsatisfactory calls on Hayford, and when she went with him to the bank she saw that the money was on deposit in his name, and received only part of it. Here was a condition of things entirely at variance with the knowledge she possessed and reasonable inferences from it. She knew that the money should be with the insurance company, or, if in a bank, should be there on deposit in her name, with no right in any person but herself to collect it. When she went to the bank with Hayford, she found, not only that the money was not in her name, but was in fact in Hayford's, and that he was paying only a portion of it. This she received without protest, and relied on his promise to pay the balance in a few days. With all these facts directly and strongly showing that Hayford had no right to the possession of this money,—facts which should have suggested investigation and inquiry as to how he acquired it, the appellant made none. We are mindful of the general rule that a party must have full knowledge of all the material facts before the doctrine of ratification can be applied.

"Ignorance of such facts, however, can avail nothing where it is intentional and deliberate, or where the circumstances are such as reasonably to put the principal upon inquiry." (Mechem on Agency, sec. 148.) This general rule is intended to protect the vigilant, not to aid those who, advised by the situation and surroundings that an inquiry should be made, make none; and ignorance of the existence of facts which might have been ascertained with ordinary diligence, is no protection. Where the situation naturally and reasonably suggests that some inquiry or investigation should be made, and none is made, the person failing to make it will be deemed in law possessed of such facts as the inquiry would have disclosed. Without making any inquiry naturally suggested, the appellant accepted the situation as she found it. She accepted the partial payment, accepted Hayford's excuses (whatever they were) why he had not made full payment, and relied on his promises to pay the balance in a few days, notwithstanding that there were ample and potent rea-

sons calling for an explanation of the possession of this money
and his conduct concerning it.  She knew he had no right to
take the money, yet she did not inquire of him how he ob-
tained it, or why the insurance company had not retained it,
or why it had not been deposited in her name in the bank.
Neither did she inquire why Hayford had not paid her the
whole amount, or inquire why any part of an entire fund
which should have been paid in full was withheld.  It was
her duty, under these circumstances, to inquire by what
authority he held the money, because his possession of it was
inconsistent with her information that the money was retained
by the insurance company for her, and could only be collected
by her.  Her subsequent repeated demands on Hayford, and
his failure to pay, certainly should have prompted some in-
vestigation.  Hayford's whole conduct towards her in the
transaction was suggestive of at least unfair dealing, which
should have created suspicion and awakened some action in
appellant concerning her own interests.  During all the time
that she was making these demands she was in the same city
with the Nyes, knew them, and where they resided, and from
all that appears their relations were entirely pleasant.  It
was also the city where the office of the insurance company
was located.  She did not call at the insurance office to find
out how, in the face of her information that the money could
not be paid to any one but herself, it had gotten into Hay-
ford's hands.  If she had, she would have learned the true
situation,—that Hayford had fraudulently represented him-
self as her agent and collected and receipted for the money as
such.  As Hayford was not her agent, and the money paid
him without authority by the company, she would have been
entitled, if her investigation had been prompt, to receive the
balance from it, or maintain an action for its recovery.
Neither did she notify Nye of the actual failure of Hayford
to make payment in full, nor did she make any demand on
Nye for its payment until more than three years after Hay-
ford's partial payment.  She testified that she thought Hay-
ford in some manner represented Nye in the payment of this
money.  She should then have notified him of Hayford's
failure to do so.  Her own interest should naturally have sug-
gested such a course, in order that she could obtain the bal-
ance of her money, and common fairness should have

prompted it so that Nye could be in a position to protect himself against his agent's misconduct, and obtain by prompt and early efforts that redress which he might be unable to secure after lapse of years. Nor will it do to say in this regard that her right to make demand on Nye was measured by the time the note secured by the mortgage had to run. While, as a general proposition, and under ordinary circumstances, this is true, yet in considering her actual relation to Hayford in the transaction, and with a view of determining whether her conduct and acts amount to ratification, failure to make demand or give notice is an important factor to be considered. By giving such notice, or making demand on him, Nye could have discovered, if appellant had not, how Hayford obtained the money and in what capacity. And, so discovering it, he would at least be entitled to demand of the insurance company that it pay appellant the balance unpaid by Hayford, a demand with which we must assume the company would have complied. By her failure to inquire at the insurance office and discover the true situation, she permitted her right to insist on payment from the company of this balance to be barred by the statute of limitations. If she had by investigation advised herself of the unauthorized payment by the company, it would have been her legal duty to Nye to enforce payment from it, or abide the consequences of her failure to do so, which would be to relieve Nye from further responsibility. And her failure to notify Nye, or make any demand on him, until long after the statute of limitations had run against her right of recovery from the insurance company, injured Nye to the extent that it prevented him from investigating the matter, and insisting upon his legal right to have the company pay her, or to compel the appellant to enforce payment from it. It is to be observed, too, not only that the appellant during these several years made no demand on Nye, but made all her demands on Hayford, and looked to him for payment. Nor did she ever demand or seek to obtain from Nye the return of her mortgage. With all these matters before it—her long silence and inaction, her demands alone on Hayford for payment, her failure to make inquiry or investigation, or any notice to or any demand on Nye—the lower court was warranted in concluding as a matter of law that they amounted to a ratification by appellant of Hayford's assumed agency.

From this evidence the lower court might well have found that the circumstances made it her duty to inquire how Hayford got this money, and that, as she made no inquiry either of Nye or the insurance company, she meant to look to Hayford as her debtor, and without further information assume responsibility for his conduct and to adopt his acts. The facts all reasonably and logically sustain such a conclusion, and it follows from it that the payment by the insurance company to Hayford, as appellant's agent, of the fund allowed and to be applied on the mortgage, was payment to appellant; and as that amount with the sum presented by the money-order was sufficient to pay the debt in full, the general finding of the lower court that the entire debt was paid, was justified by the evidence.

There is some point made by the appellant that the amount, aggregated by the insurance money and the money-order sent by Nye, was not sufficient to pay the debt. If this was a fact, the amount in dispute is so trifling that the rule of *de minimis* must apply, and besides there was no objection made on this ground when the money-order was received.

The errors of law assigned are based upon the admission in evidence, over appellant's objections, of a receipt given by Hayford to the insurance company when he obtained the money, signed by him as attorney for the appellant; also a check for the money drawn to appellant's order, and purporting to have been indorsed by appellant, and also by Hayford. We think there was no error in admitting this evidence. They were proper items of evidence to be received by the court, not to establish actual agency, but as tending to show the assumed agency under which the money was paid. It is this assumed agency to which the law of ratification applies, and which, before it can be applied, must be proven, and this evidence was admissible as tending to prove it.

No other questions being presented in this case, the judgment and order appealed from are affirmed.

McFarland, J., Angellotti, J., Shaw, J., Beatty, C. J., and Van Dyke, J., concurred.