[Civ. No. 3613. First Appellate District, Division One.—March 4, 1921.]

## J. C. FLOYD, Appellant, v. TIERRA GRANDE DEVELOPMENT COMPANY (a Corporation), Respondent.

[1] EVIDENCE—EXCHANGE OF REAL PROPERTIES—ESCROW INSTRUCTIONS—FRAUD.—Escrow papers prepared by the parties to an exchange of real properties, defining the obligations and duties of said parties, including an obligation on the part of one of them to pay a commission in a specified sum to a given agent for services rendered in effecting said exchange, are admissible, in an action by the agent to recover such commission, where false and fraudulent representations are relied upon to avoid the agreement of exchange.

[2] CORPORATIONS—RATIFICATION OF AGREEMENT—IGNORANCE OF CONTENTS—VALIDITY OF RESOLUTION.—The force of a resolution passed by the directors of a corporation ratifying a contract for the exchange of real properties cannot be avoided on the ground that all the parties present were ignorant of the contents of the agreement which they assembled to ratify.

[3] ID.—CONCEALED RESOLUTION—ESTOPPEL.—A corporation is bound by the same rules of law that govern individuals and no concealed resolution, however artfully worded, may give a corporation an advantage that does not belong to an individual.

[4] ID.—APPARENT AUTHORITY OF GENERAL MANAGER—KNOWLEDGE OF OFFICERS—ESTOPPEL.—Where the officers of a corporation have full knowledge that the name of the general manager of the corporation appears in the body of an agreement for the exchange of real properties as the owner of one of the properties, whereas the corporation is the owner thereof, but no objection is made to such claim of ownership, the officers, by their failure to deny and also by their affirmative action in ratifying the agreement, are estopped to deny her acts to be the acts of the corporation.

[5] ID.—ACCEPTANCE OF FRUITS—REPUDIATION OF TRANSACTION.—Where a corporation accepts the fruits of a transaction carried out by its general manager, and does not explicitly repudiate the same, it cannot relieve itself of the obligations thereby imposed.

[6] FRAUD—PRESUMPTION—PROOF—FINDINGS.—Fraud is never presumed, but must be satisfactorily proved; and where fraud is pleaded as a defense, a specific finding should ordinarily be expressly made by the court on each material issue presented.

5. Ratification of unauthorized contract entered into by officer of corporation, by acceptance and retention of benefits, note, 7 A. L. R. 1446.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Reversed.

The facts are stated in the opinion of the court.

W. J. Ford and Ford & Bodkin for Appellant.

Haas & Dunnigan for Respondent.

SEAWELL, P. J., *pro tem.*—This is an appeal by plaintiff from a judgment rendered in favor of defendant. The complaint contains two causes of action. The first is laid on a one-year promissory note bearing date October 19, 1915, for the sum of two thousand dollars, with interest at the rate of seven per cent per annum and for attorneys' fees should suit be necessary to enforce collection. The second cause is based on an agreement in writing executed September 30, 1915, by defendant's agent and general manager, Mrs. C. A. Lovell, by the terms of which said defendant bound itself to pay the plaintiff the sum of two thousand dollars as a commission for services rendered in promoting an exchange of real properties owned by defendant corporation and one Dr. E. D. Stoddard, respectively. Said causes of action sprang from the same real estate transaction.

Defendant corporation was organized September 23, 1912. Mrs. C. A. Lovell, who appears in her business transactions as C. A. Lovell, is the mother of Edward J. Fleischer and Mrs. Gertrude K. Hurley. The son and daughter were the owners of several parcels of land situate in the counties of Los Angeles and Orange. To suit a family, or other purpose, not apparent, a corporation was formed, and said properties were taken over by it. While Mrs. C. A. Lovell was quite active in its management, she insists that she did not have at any time a financial interest in said corporation's affairs. The officers of said corporation as originally organized consisted of Mrs. C. A. Lovell, president; her daughter, Gertrude K. Hurley, secretary, and her son, Edward J. Fleischer, presumably vice-president. Miss A. M. Brown, a resident of New York City, had for a brief time an official connec-

tion with said corporation, but was eventually dropped from membership. Her relations with it are not material to a consideration of the issues of the cause. The stock was owned by the son and daughter, who also constituted the entire board of directors. After serving as president for several months Mrs. Lovell resigned, and on November 7, 1914, she was, by resolution of the board of directors, made general manager, which position she held throughout the transaction of negotiation and exchange.

The properties owned by said corporation were heavily mortgaged and it was in arrears in the payment of interest. The Stoddard holdings consisted of eight hundred acres of land situate in Tulare County, together with livestock and farming equipment of considerable value. It was likewise heavily encumbered.

The mortgage and other indebtedness of each owner respectively amounted to upward of thirty-five thousand dollars. There is no controversy as to disparity of values.

Plaintiff Floyd, referred to by Mrs. C. A. Lovell as an elderly gentleman, was and had been for twenty years past a real estate dealer or broker located in the city of Los Angeles. He and Mrs. Lovell had been acquainted for a period of several years prior to this transaction. The respective owners of said properties having listed them with plaintiff for sale, he undertook to effect an exchange of said properties between said respective parties. Accordingly an agreement was prepared and executed. The parts thereof material to the issues presented are as follows:

"This agreement witnesseth: That Dr. E. D. Stoddard, owner of the following described piece of property situate, lying and being in the county of Tulare, state of California, particularly described as follows, to wit: [description follows.] Which I agree to exchange for the following described piece of properties owned by Mr. C. A. Lovell of Los Angeles, California, and particularly described as follows, to wit: [description follows.] . . .

"It is further agreed and understood that if for any reason whatsoever either or all principals to this agreement shall fail to comply with the same, and in consequence this exchange shall fail consummation, then the party or parties at fault agree to pay J. C. Floyd the full com-

mission for both sides, together with attorney and escrow charges.

"It is further agreed with J. C. Floyd that when he has received an acceptance to exchange the above properties on above terms, I will pay to him the sum of two thousand five hundred dollars ($2,500) as commission for such service irrespective of any commission paid by any other party. I will allow the second party fifteen (15) days time to furnish certificate of title or abstract and deed conveying the second described property.

"Dated this thirtieth day of September, 1915.

"DR. E. D. STODDARD.
"ELLEN STODDARD."

(Reverse side reads as follows:)

"This agreement witnesseth: That I, C. A. Lovell, of Los Angeles, California, owner of the second piece of property herein described, hereby accept the proposition of the exchange made herein and upon terms herein stated, and agree to furnish a certificate of title or abstract from a competent searcher of title within fifteen (15) days, showing property vested as deeded, and to furnish a good and sufficient deed of conveyance as directed. I agree to pay to J. C. Floyd the sum of $2,000 commission for services rendered.

"Dated this 18th day of September, 1915.

"C. A. LOVELL, Mgr."

It is admitted that said agreement was executed by C. A. Lovell on the thirtieth day of September, 1915, and not on the eighteenth day of said month as appears at the bottom of said agreement. The presence of the name C. A. Lovell in the body of the agreement as owner of the property offered by her in exchange is accounted for by plaintiff on the theory that she represented herself to be the true owner of all of the stock and property of the corporation.

Dr. Stoddard, being an elderly gentleman, was represented in the transaction by his nephew, Frank W. Ford.

[1] On October 5, 1915, certain escrow instructions or papers were prepared by the parties to the transaction, defining the obligations and duties of said parties, including an obligation on the part of said corporation to pay to plaintiff a commission in the sum of two thousand dollars

for services rendered in effecting said exchange. The escrow papers were excluded from evidence, and the contents thereof are left in an uncertain state. We are permitted only to conjecture as to what they contained by scant references occasionally made to them. Said documents, nevertheless, constituted a part of the transaction in which false and fraudulent representations are relied upon to avoid an agreement. Such evidence was material to the main issues, to wit, fraud or no fraud. Said offer was not made with a purpose to vary the terms of a written contract, nor could such evidence have been properly excluded on the theory that all of the agreements of the parties were merged in the final written agreement. This evidence was offered for no such purpose. It was pertinent, however, to the question of whether or not deceit or fraudulent practices had been employed. In other words, it was admissible as evidence bearing upon the vital subject of inquiry, to wit, fraud. In the investigation of fraudulent conduct a very generous rule obtains.

Returning to the chronological order of events, it is shown by the record kept by the secretary of said corporation that on October 9, 1915, a meeting of all of the officers and stockholders, to wit, President Edward J. Fleischer and Secretary Gertrude K. Hurley, was held, after notice regularly given, for the purpose of ratifying the contract and agreement entered into on the thirtieth day of September, 1915, between Dr. Stoddard, his wife, and C. A. Lovell.

Mrs. C. A. Lovell, general manager, and attorney H. H. Hahn, a member of the law firm of Hahn & Hahn, attorney for said corporation, were also in attendance at said meeting. In fact, H. H. Hahn, Esq., outlined and directed the legal procedure for the occasion and dictated the draft of the minutes of the meeting. With the contract dated September 30, 1915, before them, which contract or agreement had been in the possession of the agents and officers of said corporation for nine consecutive days, a resolution was adopted, of which the following is a part:

"This corporation does hereby approve of and ratify a certain agreement entered into in writing between C. A. Lovell and Dr. E. D. Stoddard, and dated September 30, 1915, for the exchange of the above described properties, and in the effecting of such exchange the president and

secretary of this corporation are hereby authorized to modify or change the terms above set forth in such manner and to such extent as they in their judgment may deem beneficial to this corporation.''

The authority given to the president and secretary by the above resolution to modify or change the terms ''above set forth in such manner and to such extent as they in their judgment may deem beneficial to this corporation'' has no reference to the commission of two thousand dollars to be paid to plaintiff, as this matter is not one of the things set forth or mentioned in said resolution of ratification.

In fact, it is the claim of Mrs. C. A. Lovell that she did not tell her son or daughter until October 12 or 15, 1915, anything about the contract containing a provision to pay said commission to plaintiff. The son and daughter contend that neither had any knowledge at the time the ratifying resolution was passed that the agreement contained a provision for the payment of a commission. Indeed, H. H. Hahn, the attorney who prepared the minutes of ratification, upon making answer at the trial to a question as to whether he had examined the agreement of September 30, 1915, which had been submitted to him for examination and inspection, said: ''I examined *only the front page,* at the bottom of which appears the signatures Dr. E. D. Stoddard and Ellen Stoddard.'' ''Q. Did you see the reverse side? A. I did not: *it was not called to my attention or discussed in my presence.*''

That all of said parties except Mrs. C. A. Lovell, who remained silent, under the circumstances of the situation, were informed as to all other portions of said agreement except that portion or particular part which obligated said corporation to pay a commission seems highly improbable. Such a statement amounts almost to a challenge to credulity. Without the portion which provided for said commission there would have been no acceptance, no contract, and therefore nothing to ratify.

Mrs. C. A. Lovell represented herself as being unable to immediately pay the two thousand dollar commission, and it was agreed that she should give a note payable one year after date. Shortly prior to the close of the transaction, and at a time when the agreements of exchange were about

to be released from escrow, in response to the demand of plaintiff upon Mrs. C. A. Lovell that she execute and deliver to him the promissory note agreed upon, she caused to be executed and delivered the note here sued upon, which is in words and figures as follows:

"$2,000.                    Los Angeles, .Cal., Oct. 19, 1915.

"One year after date without grace I promise to pay to the order of J. C. Floyd two thousand dollars payable at Los Angeles for value received, with interest from date at the rate of seven per cent per annum until paid. Principal and interest payable in U. S. gold coin at Los Angeles, and in case suit is instituted to collect this note or any portion thereof I promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit.

"(Signed)   TIERRA GRANDE DEV. CO.<br>"By C. A. LOVELL, Mgr.

"No. ——. Due October 19, 1916."

As a defense to the first cause of action defendant variously sets out in his answer that said note was signed and delivered by Mrs. C. A. Lovell without authority from the defendant to so do; that it was given without any consideration whatever; that Dr. Stoddard had criticised plaintiff, and charged him with favoring defendant in several controversies that had arisen affecting said exchange of properties; that plaintiff obtained said note by falsely stating that he wished to show it to Dr. Stoddard so as to convince him that both he and the corporation were receiving the same treatment; that plaintiff also represented that he wished to place said note with the escrow papers so that the trust officer of the title insurance and trust company would think plaintiff was doing a good business; that defendant did not owe plaintiff anything on account of commissions, and that it was agreed that said note after it had served the purpose of its procurement would be destroyed; that said representations were false and fraudulent; that said C. A. Lovell did not sign said note as defendant's corporate act, and that she had no authority to do so; that said defendant corporation did not discover the execution of said note until November 1, 1915; that the use said note was intended to serve was contrary to public policy.

The answer to the second cause of action repeats much of the matter heretofore set out, and in addition denies that defendant entered into an agreement requesting or empowering plaintiff to negotiate any exchange of said properties. It affirmatively alleges, however, that plaintiff was engaged in attempting to bring about an exchange of real properties between Dr. Stoddard and defendant, and that Mrs. C. A. Lovell assisted therein, but that it was expressly agreed that defendant, in the event that said exchange should be effected, would not be obligated to pay plaintiff any commission for his services. The execution of the agreement of September 30, 1915, is admitted, but it is denied that a commission was in fact to be paid. It is averred that the purposes of signing said agreement was to enable plaintiff to satisfy Dr. Stoddard that defendant had also agreed to pay plaintiff a commission. It is denied that defendant was a party to said commission agreement or that it authorized Mrs. Lovell to execute the same. Denial is made that her act or acts were ratified by the corporation. It is further denied that plaintiff performed services and labor in bringing about said exchange. A fraudulent design and purpose is charged against plaintiff in obtaining the signature of Mrs. Lovell to both note and agreement.

The findings of the trial court substantially follow the allegations of the defendant's answer except that there is no specific finding of fraud on the issue that the *agreement* was obtained by fraudulent representations.

Because of a failure, in our opinion, of the sufficiency of the evidence to support the finding based on fraud, no special notice will be taken of the question whether or not the facts relied upon to establish the separate causes of action are so related as to make a finding on one decisive of the other, except to observe that such a finding made in reference to the second cause of action would render it unnecessary to find on the issue presented in the first; while the converse of the proposition would not be true.

The findings of the court that plaintiff requested the execution and delivery of said note "so that said trust officer would think that he, plaintiff, was transacting a good piece of business," stands without a *scintilla* of evidence to support it. The same may be said of the finding that defendant corporation did not discover the execution of

said note until on or about November 1, 1915. It was admitted at the trial that its existence was known as early as October 19, 1915. Mrs. C. A. Lovell testified thát she told her attorney of the existence of the note at about that time.

The reasons given in justification or by way of excusing the execution of the note and commission agreement are too trivial and futile to require extended consideration. It is nowhere explained in what manner Dr. Stoddard or his nephew, Frank W. Ford, who solely represented him in the transaction, could have been interested or could in any way have profited by the payment of a commission to plaintiff.

All the parties to the action appear to possess more than ordinary intelligence. Mrs. C. A. Lovell had for several years past been the manager of defendant corporation. In fact, she organized it. She was well experienced in business affairs. She had also been engaged in the brokerage and mining business. Her son, Edward J. Fleischer, had also been engaged as a real estate broker, and was a man of business experience. Mrs. Hurley was the secretary of the corporation and doubtless understood ordinary business transactions. It appears, therefore, that none were without business training and experience. The negotiations extended over a period of four or five months, and every member of the family took an active interest in consummating the exchange.

It was the claim of Mrs. Lovell that Mr. Ford, representing his uncle, insisted that defendant should pay a commission, and objected to the delivery of the escrow instructions because they contained no provision requiring defendant to pay a commission to plaintiff, and that in order to placate him she executed and delivered the note in controversy. Mr. Ford absolutely denies her statement. He testified that neither Dr. Stoddard nor himself had any interest whatever or concern in the question of a commission to be paid by defendant to plaintiff or anyone else. His testimony is that it was a matter of absolute indifference to him whether the escrow papers contained a provision for the payment of a commission by defendant or were silent on the subject. Mrs. Lovell is also contradicted in this particular by the escrow-holder, Ralph R. Johnson.

The only person who insisted on the execution of the note before the transaction should be closed was plaintiff. He instructed escrow-holder Johnson to include the note among the escrow papers.

That Mrs. C. A. Lovell regarded herself or the corporation liable for the payment of a commission in connection with the exchange appears from the testimony of another apparently disinterested witness, E. R. Corson, a stockholder of a corporation that held a mortgage on the defendant's real property. His testimony is that pending negotiations for said exchange Mrs. Lovell made the statement that she would have to pay a commission "if this deal does not go through." There was a provision in the agreement to the effect that should either party fail to comply with the terms of said contract, such party so failing should pay the full commission for both sides to said J. C. Floyd.

The documentary evidence received at the trial is decidedly, if not indeed conclusively, in favor of plaintiff's claim. His testimony was in essential parts at least corroborated by all of the disinterested witnesses who testified in the case. The facts contended for by defendant take such a wide departure from ordinary rules of human conduct and experience under the circumstances of the situation as to raise the question of improbability as to their existence. The reasons urged in explanation of damaging conduct are far from satisfactory.

[2] That the resolution adopted October 9, 1915, was a ratification of the whole contract, including the agreement for commissions, cannot admit of doubt. The force of the resolution cannot be avoided on the ground that all the parties present were ignorant of the contents of the agreement which they had assembled to ratify. If such a practice is to prevail the most solemn forms prescribed by the law by which man may pledge faith with man will become but a mock ceremony.

As to the binding consequence of Mrs. Lovell's acts there can be no serious doubt. By the resolution dated November, 1914, she was appointed general manager of said corporation, with full power to sign checks, pay bills, negotiate purchases and sales of property for the corporation, subject to the approval of the board of directors. Said resolution provided, however, that she was "not authorized to

create any indebtedness or sign anything in writing unless first authorized to do so by resolution of the board of directors." **[3]** A corporation, however, is bound by the same rules of law that govern individuals, and no concealed resolution, however artfully worded, may give a corporation an advantage that does not belong to an individual. **[4]** We are of the opinion that under the authorities, her active participation in the transaction, assuming as she did have full authority to deal with said property, doubtless with the consent and knowledge of her children, is sufficient without recourse to the positive ratification made by said corporation on October 9, 1915, to hold her acts to be the acts *of the corporation.* There is no denial of the fact that the corporation officers had knowledge of the fact that C. A. Lovell appeared in the body of the agreement which was ratified October 9, 1915, as owner of the properties which she offered in exchange. No objection was made to her claim of ownership. The corporation officers are unquestionably estopped by a failure to deny and also by their affirmative action in ratifying the agreement.

Sufficient to illustrate the principle of law as here announced, see *Dover* v. *Pittsburg Oil Co.,* 143 Cal. 501; [77 Pac. 405]; *Wisp* v. *Hazard,* 66 Cal. 459, [6 Pac. 91]. The case first cited also makes citation to sections of the code applicable to the questions presented.

**[5]** Defendant accepted the fruits of the transaction and has never since explicitly repudiated it. This it must do if it would relieve itself of the obligations which the law will otherwise cast upon it. (*Pope* v. *Armsby Co.,* 111 Cal. 159, [43 Pac. 589]; *Ballard* v. *Nye,* 138 Cal. 588, [72 Pac. 156].)

It is not necessary to multiply authorities in support of well-recognized principles of substantive law.

**[6]** We are satisfied that if the general finding may be construed as a sufficient finding applicable to plaintiff's second cause of action, said finding would still stand unsupported by the evidence. Plaintiff was entitled to a specific finding on the issue as framed by the second cause of action, for the reason that the court may have found said note to have been fraudulently obtained, if the evidence so warranted, and also to have found *against* a fraudulent procurement of said agreement. Allegations of fraud being

serious in their effect, a finding should ordinarily be expressly made by the court on each issue presented. Fraud is never presumed. It must be satisfactorily proved.

The issue of fraud not being sustained by the evidence, the judgment appealed from is reversed.

Kerrigan, J., and Richards, J., concurred.