**C. H. ELLE CONSTRUCTION CO., a Corporation, and St. Paul-Mercury Indemnity Co., a Corporation, Appellants,**

v.

**WESTERN CASUALTY AND SURETY CO., a corporation, Appellee.**

**No. 16994.**

United States Court of Appeals
Ninth Circuit.

Aug. 30, 1961.

A. L. Merrill, R. D. Merrill and W. F. Merrill, Pocatello, Idaho, for appellants.

O. R. Baum, Ben Peterson and Ruby Y. Brown, Pocatello, Idaho, for appellee.

Before CHAMBERS, ORR, and POPE, Circuit Judges.

POPE, Circuit Judge.

In this action C. H. Elle Construction Co. and St. Paul-Mercury Indemnity Co. sought to recover from Western Casualty

and Surety Co. by way of contribution or indemnity, a portion of the sums, some $15,317.40, paid by St. Paul in satisfaction of a judgment recovered against Elle and one Horsley, an employee of Elle, by way of damages, for personal injuries suffered in an automobile collision. Horsley was driving a certain Chevrolet truck in and about Elle's business at the time of the collision. St. Paul had issued to Elle its so-called multiple coverage policy insuring Elle against loss by reason of liability imposed by law for bodily injury and property damage. The policy provided that it should be excess insurance beyond the amount payable under any other policy or policies affording insurance protection to Elle.

The Chevrolet truck was the property of one William S. Gagon. The defendant Western Casualty and Surety Co., here called Western, had issued to Gagon a policy of automobile liability insurance covering property damage and property liability for personal injury with limits with respect to each type of damage of $10,000.

It was alleged by the plaintiffs that Horsley was driving the truck with the consent and permission of Gagon. Western's policy contained a so-called "omnibus clause" which recited that the word "insured" in the policy "includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, providing the actual use of the automobile is by the named insured or with his permission;".

Because of Elle's claim that Horsley had the permission of Gagon to drive the truck, it was asserted as the basis of the suit below that Western was obligated by its policy to defend the suit and that as between the two insurance companies Western's liability was primary and St. Paul's insurance was excess only.

The trial court found that at the time of the collision the truck described in Western's policy was being driven by

Horsley "without the permission, express or implied, of the named insured in said policy, namely, William S. Gagon." The court therefore concluded that Western's policy of insurance did not insure Horsley or Elle or either of them. Accordingly, judgment was entered for the defendant Western. This appeal followed.

The facts in the case are not in dispute; they present no problem of credibility of witnesses and the entire case was presented to the court and heard upon the basis of stipulations as to the genuineness of certain documents, replies made to requests for admissions, certain other stipulated facts, and upon four depositions taken before trial and made a part of the record. There was no testimony in open court.

Upon an earlier trial of the case on the same record, the trial court took the view that since Gagon had been made a defendant in the action brought by the injured parties to recover damages arising out of the collision, and since the verdict and the judgment had run in favor of Gagon, such prior judgment was a conclusive determination that Horsley was driving the vehicle without the owner's permission. Upon appeal from that earlier judgment, this court reversed and ordered a retrial. C. H. Elle Construction Co. v. Western Casualty & Surety Co., 9 Cir., 261 F.2d 533. The retrial resulted in the finding and judgment stated above.

Since the trial court had before it only the depositions referred to, the stipulations and the stipulated documents, it would appear that in reviewing the findings of the trial court we have the same freedom in considering the probative value of the evidence before the court as was recognized in Murphey v. United States, 9 Cir., 179 F.2d 743, 744, and in the other cases there cited.[1] See the discussion in Moore's Federal Practice, 2d Ed., Vol. 5, Sec. 52.04, p. 2637.

But even though we are not required in this case to give to the findings of the trial court the same deference which we

---

1. "The entire evidence is in two depositions of witnesses taken by the United States and hence warrants our own consideration of its probative value, with due respect to the findings of the court below."

would be obliged to do if they were based upon an evaluation of the credibility of witnesses giving oral testimony in court, yet after a consideration of the evidence, which is nowhere in conflict, we find ourselves in agreement with the findings and conclusions of the court below.

William S. Gagon, owner of the Chevrolet truck, was in the business of selling lumber and operating a lumber yard at Soda Springs, Idaho. The truck was used in the business of operating the lumber yard. It was not a family car. Gagon's wife, Jessie Gagon, acted as bookkeeper for Gagon but there is no evidence in the record that she ever performed any other duties in or about the lumber yard or had anything to do with its management or the management of the business.

On the 22nd day of August, 1954, Horsley, the employee of Elle, went to Gagon's place of business for the purpose of borrowing the truck. He was then acting for and on behalf of Elle. It was a Sunday and Gagon was away on a fishing trip. Mrs. Gagon was at her sister's house. Horsley telephoned Mrs. Gagon and asked to borrow the vehicle and Mrs. Gagon then went to the lumber yard and got the keys for the truck and gave them to Horsley. The lumber yard was closed at the time but Mrs. Gagon opened the gates and Horsley drove the truck out of the yard.

Gagon had never authorized his wife to loan any of the equipment; and she had never loaned the truck or anything else to Horsley before. She had neither express nor implied power to lend the truck. It was upon that date that Horsley had the collision which gave rise to the action mentioned.

Appellants argue that the evidence was sufficient to show that Horsley had an implied permission from Gagon to use the truck, contending that Horsley's prior use of the truck gave rise to such an implied permission. However, the evidence shows that the only times Horsley had driven the truck was when he had done so pursuant to an express understanding with Gagon. On those occasions Horsley had gone to the lumber yard and purchased merchandise for himself; when Gagon did not have a delivery man to deliver the materials to Horsley, Horsley had arranged to deliver the materials himself with the Gagon truck.

█ We are of the opinion that the record is wholly inadequate to lay any basis for an inference of an implied authority to Horsley to use the truck because of any course of dealing or prior permission.

█ It is next contended by the appellant that Western admitted coverage with respect to Horsley's liability. This contention is based upon a notice of policy which was filed by Western with the Idaho Commissioner of Law Enforcement. This notice gave the date and place of the accident, described the Chevrolet truck, stated that it was operated by Horsley, owned by Gagon, what the automobile limits were, and that the policy was in effect on the date of the accident. The form notice was then filled out as follows: "Does this policy apply to the above owner: Yes (x) No ( )—Does this policy apply to the above operator: Yes (x) (No ( )." The appellant contends that in stating that the policy applied to Horsley Western was admitting coverage and hence admitting that Horsley was driving within the terms of the conditions of the policy, namely, with the permission of the owner.

Appellee contends that this report or notice is not admissible in evidence and cannot be used against it because of the provisions of the Idaho Code Section 49–1511 as follows:

"Matters not to be evidenced in civil suits.—Neither the report required by section 49–1504, the action taken by the commissioner pursuant to this act, the findings, if any, of the commissioner upon which such action is based, nor the security filed as provided in this act shall be referred to in any way, nor be any evidence of the negligence or due care of either party, at the trial of

any action at law to recover damages." [2]

Our analysis of the Idaho statutes referred to in the footnote just preceding convinces us that the report filed by the insurance company was not inadmissible in evidence by virtue of any statutory provisions. But though it was receivable in evidence as an admission of coverage and hence of Horsley's driving with permission of the owner, we must bear in mind that such admissions, unlike judicial admissions, are not conclusive. When other evidence clearly discloses that the admission is a mistaken one, it should be disregarded in the interest of arrival at the truth and the actual facts. State Farm Mutual Auto. Ins. Co. v. Porter, 9 Cir., 186 F.2d 834, 843, 52 A.L.R.2d 515.[3]

Here all of the testimony shows a complete lack of permission from Gagon to Horsley and shows conclusively that Mrs. Gagon was wholly without authority to grant such permission.

■ It is argued, however, that Gagon ratified Mrs. Gagon's act in granting use of the truck on this occasion by sending a bill to Elle for truck rent on the day in question. What happened was that on October 6, 1954, Gagon made out in his own handwriting a notation of a charge to Elle and Horsley for "truck rent $15." This charge was entered on the Gagon ledger sheet and a bill for this and other items was sent to Elle and paid by it. It is contended by appellants that thus Gagon ratified the grant of permission made by his wife and that that ratification relates back to the original act of Mrs. Gagon and under the familiar rules of ratification it is the equivalent of prior authority. In making this argument appellants rely upon United Services Automobile Association v. Russom, 5 Cir., 241 F.2d 296.

It is true that in the United Services case there is a brief reference to ratification,[4] but the facts in that case are far different from those present here for there the operator of the car had been driving and using the car for some time with the consent of the owner who was trying to sell it to him. The basis of that decision is clearly an implied permission based on the conduct of the parties. The case contains no discussion of the problem which we have here and that is

---

2. The Idaho statutes relating to this general subject appear to have been rather loosely drawn and the section just quoted apparently has no reference to a report made by an insurance company such as this. Sec. 49–1504, referred to in the quoted language, relates to reports required by Sec. 49–1007. The last named section calls for written reports by the driver of a vehicle involved in an accident and by law enforcement officers investigating motor vehicle accidents. Sec. 49–1008 provides for reports by other occupants in the vehicle at the time of the accident and by the owner of the vehicle involved in the accident where the driver is physically incapable of making the report required by Sec. 49–1007. Sec. 49–1012 calls for reports by garages or repair shops to which are brought motor vehicles showing evidence of being in an accident. Sec. 49–1013 provides that all accident reports made "by persons involved in accidents or by garages shall be without prejudice to the individual so reporting and shall be for the confidential use of the department." It also provides that "no such report shall be used as evidence in any trial, civil or criminal, arising out of [the] accident."

We find no statutory provision for the making of a report by an insurance company as such. Sec. 49–1009 provides for the department to prepare and upon request supply the police departments, coroners, sheriffs, garages and "other suitable agencies, or individuals, *forms* for accident reports required hereunder, appropriate with respect to the persons required to make such reports and the purposes to be served." (Emphasis added.) We are unable to discover that either Sec. 49–1013, referred to above, nor Sec. 49–1511 quoted above, has any reference to any report filed by an insurance company.

3. "Such admissions, of course, are in no sense conclusive; they may be explained away or contradicted. Wigmore on Evidence, 3d Ed. Sec. 1059."

4. The reference is in one sentence as follows (241 F.2d at page 299): "Use by Enslen was further ratified since title was subsequently transferred formally to Enslen January 26, 1950."

whether the insurance company can be charged with a liability through the retroactive operation of a process of ratification of an authority which was not existent on the date in question.

Clearly enough when this accident occurred Western was in no sense responsible and its policy did not cover the accident or liability arising thereunder for Horsley was operating without permission. The question is whether this status of non-liability may be converted into one of responsibility by Gagon's later ratification. There might well be a nice question here as to whether the sending of the bill was in fact a ratification. It might well be argued that the bill or the making of the charge was equivocal because whether there was or was not permission Elle could properly be charged with the value of the truck's use. But passing that point, the question is whether under Idaho law, a third person in the position of this insurance company can be rendered retroactively responsible and its existing position changed by a ratification by Gagon of the original unauthorized act of Mrs. Gagon in dealing with Horsley.

No Idaho cases have been found upon this point and we are therefore left to judge as best we may what the Idaho law may be with respect to the creation of such liability by ratification.[5]

Under this situation we feel impelled to rule that the law of Idaho on this point is in accord with the weight of authority and that the applicable principle is that stated in the early case of Taylor v. Robinson, 1859, 14 Cal. 396, 401, as follows: "Now, although the general rule is that the ratification relates back to the time of the inception of the transaction, and has a complete retroactive efficacy, or as the maxim is, *Omnis ratihabitio retrotrahitur*—yet, this doctrine is not universally applicable. Thus, if third person acquire rights, after the act is done and before it has received the sanction of the principal, the ratification cannot operate retrospectively, so as to overreach and defeat those rights."

In Pape v. Home Ins. Co., 2 Cir., 139 F.2d 231, 233, the plaintiff held a policy of insurance upon cotton which provided for payment in case of loss or damage in Spain caused by "riot", "civil war", "civil commotion", or "military or usurped power". The policy further provided that it did not cover loss resulting from "confiscation or authorized destruction by duly constituted government or civil authorities". Plaintiff's cotton was seized during the Spanish Civil War by a labor committee, "a body without official standing". Plaintiff asserted right to recover under this policy because of this seizure and concededly a cause of action then arose on his behalf. Thereafter the then established government took charge of the cotton and it was asserted "thereby ratified the seizure by the unofficial labor committee." The insurance company claimed that through this ratification the seizure became one of confiscation by a duly constituted governmental authority. The court said that assuming that a ratification had been made or attempted yet the court's decision was that it would (139 F.2d at page 235): " * * * rest our conclusion only upon the well settled rule that ratification does not date back to destroy intervening rights of third persons or otherwise to achieve an inequitable result." The court cited the Restatement of the Law of Agency and other cases.

Professor Mechem in his work on Agency, Section 486, expounds this same principle and states the reason therefor concluding that "The intervening rights of third persons cannot be defeated by the ratification". He states: "Nor will the principal by ratifying be permitted

---

5. It must be conceded there is a certain amount of risk attendant upon this court's attempt, where there is no Idaho case, "to reason the case along lines that it thinks would appeal to an Idaho court", Union Pacific Railroad Company v. Johnson, 9 Cir., 233 F.2d 427, 430, as demonstrated by Johnson v. Union Pacific Railroad Co., 352 U.S. 957, 77 S.Ct. 359, 1 L.Ed.2d 316 and Union Pacific Railroad Company v. Johnson, 9 Cir., 249 F.2d 674.

**464**

to impose substantial duties or obligations upon third persons which would not exist if ratification had not taken place."

In the following section 487, he says: "The doctrine of the preceding section has also been applied, in a number of cases, to prevent the loss by third persons, through the principal's ratification, of existing defenses against liability, conditions affecting liability, rights to escape liability, and the like." Referring to Johnson v. North British & Mercantile Ins. Co., 66 Ohio St. 6, 63 N.E. 610, a case very closely resembling the facts before us, Professor Mechem uses it as an example in the following language: "Thus, for example, where an agent has obtained a policy of insurance for his principal, and later, without the authority or knowledge of the principal, has assumed to surrender that policy and take another in its place,—the latter containing the usual provision that it should be void in case of undisclosed prior insurance—it has been held that, after a loss has occurred before the principal has consented to the surrender of the first policy, the principal cannot by the ratification of such surrender deprive the second company of its right to make the defense of other insurance."

In the Johnson case thus referred to the court quoted from its earlier decision in Pollock v. Cohen, 32 Ohio St. 514, as follows: "Where, however, intervening rights have been acquired by a third party, such intervening rights cannot be injuriously affected by the ratification." See also Cook v. Tullis, 18 Wall. 332, 85 U.S. 332, 338, 21 L.Ed. 933.

We do not suggest that there are not decisions to the contrary. That the rule to which we have just referred and which was accepted by Professor Mechem represents the weight of authority is evidenced by the fact that it has been accepted and stated in the Restatement of the Law of Agency. Restatement of the Law of Agency 2d, Sec. 90. That section reads as follows: "90. Affirmance after Rights have Crystallized—If an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." As shown by the Reporter's Notes to this section, it purports to adopt a rule accepted by sundry writers on the subject of agency including Story on Agency. At the outset the Reporter quotes from Story the following language which seems particularly applicable to the case before us: "Story said: 'if the act done by [the agent] would, if authorized, create a right to have some act or duty performed by a third person so as to subject him to damages or losses for the nonperformance of that act or duty, then the subsequent ratification or adoption of the unauthorized act by the principal will not give validity to it so as to bind such third person to the consequences.'"

Referring to the text of Section 90 quoted above, it should be noted that in order to create a right against the insurance company under its policy there must have been a prior permission to Horsley to drive the truck. Unless Horsley at the very time he drove the truck was driving with the permission of the owner Western was not liable and it had an absolute defense. To deprive Western of that defense a ratification or affirmance after the accident could not be effective.

We think that the Idaho court would, like ourselves, be impressed with the Restatement's deliberate choice of the rule here referred to as the better and most sound one. One thing which persuades us as to the soundness of this rule is the realization that a different rule might well tempt individuals to utilize the device of ratification to impose liability upon an insurance company where none otherwise existed, perhaps merely because the injured party is less able to bear the loss than the insurance company. Thus if the St. Paul company were not in this picture and the persons injured by Horsley's negligence were badly hurt, Gagon might be tempted to ratify his wife's unauthorized act in order to help the injured party.

We therefore hold that the appellee Western did not become liable or respon-

sible on account of the accident which occurred while Horsley was driving the truck. We think that the decision of the trial court was correct and the same is affirmed.