[No. F034484. Fifth Dist. Aug. 28, 2001.]

ALLIED MUTUAL INSURANCE COMPANY, Plaintiff and Respondent,
v.
RICK WEBB et al., Defendants and Appellants.

**COUNSEL**

Reiner, Simpson & Kennedy, Robert G. Simpson and Daryl E. Kennedy for Defendants and Appellants.

Thayer, Harvey & Gregerson, Dale H. Thayer and Mark J. Alexander for Plaintiff and Respondent.

**OPINION**

LEVY, J.—Appellants, Rick Webb and Mary Leon, challenge the trial court's finding that a business automobile liability policy issued by respondent, Allied Mutual Insurance Company (Allied), to Dallas Brothers Farms (Dallas Brothers) did not provide coverage for an accident caused by a Dallas Brothers employee. The trial court concluded that, although the subject pickup truck was covered as a "borrowed vehicle," the employee, Richard Galvan, was not insured as a permissive user. The court further noted that, even if Galvan were a permissive user, his conduct exceeded the scope of the implied permission.

In order to prevail, appellants must demonstrate that both components of the trial court's ruling are incorrect as a matter of law. With respect to Galvan's status as a permissive user of the truck, appellants argue that Dallas Brothers granted such permission by ratifying Galvan's conduct. According to appellants, this ratification occurred when Dallas Brothers failed to either reprimand or discharge Galvan following the accident. Appellants further contend that the policy insures a permissive user for any conduct because it does not restrict coverage to use that falls within the scope of the permission.

However, a nonpermitted use of a vehicle cannot be ratified by the insured after an accident so as to impose liability on the insurer. Thus, on this ground alone, we affirm. The trial court correctly concluded that there was no coverage under the Allied policy. Consequently, there is no need to decide whether Galvan's conduct would have exceeded the scope of the permission if permission had been granted.

### STATEMENT OF THE CASE AND FACTS

Robert E. Dallas (Robert, Sr.) and his sons, Robert A. Dallas (Robert, Jr.) and Thomas Dallas, grow and pack sweet potatoes. This family farming operation is conducted through several entities owned in various proportions by these individuals. Robert, Jr., and Thomas farm the land through their partnership, Dallas Brothers. However, the land is owned by Robert, Sr., and Dallas Distributing. Dallas Distributing, a partnership owned in equal shares by Robert, Sr., Robert, Jr., and Thomas, operates the sweet potato packing component of this enterprise.

Sweet potato seedlings are grown in "hot beds." These seedlings require daily care. At a minimum, the hot beds must be checked every morning.

Richard Galvan works for Dallas Brothers as a full-time foreman. Galvan's compensation does not include the personal use of a partnership vehicle. However, so long as Galvan is in possession of a valid driver's license, he is permitted to drive Dallas Brothers vehicles for business purposes. Galvan's driving history includes periods of his having a restricted or suspended license.

At some point before the subject accident, Robert, Sr., parked his 1974 Chevrolet pickup truck near the Dallas Brothers shop. Robert, Sr., had "retired" this pickup from active use and made it available to Dallas Brothers as a spare vehicle. The keys to the 1974 pickup were kept inside the shop along with the keys to the Dallas Brothers vehicles. Galvan was one of the few Dallas Brothers employees who had a key to the shop.

In March 1991 Galvan was responsible for tending the hot beds on weekends. On Friday, March 15, 1991, Galvan's car broke down on his way home from Dallas Brothers. Galvan returned to the shop and took the keys to the 1974 pickup truck. Galvan then drove the pickup home. Thereafter, without asking permission to do so, Galvan used the pickup to drive to and from the hot beds on Saturday.

Galvan again took the 1974 pickup truck to the hot beds on Sunday morning, March 17. After working for a few hours, Galvan drove to a friend's home. While there, Galvan consumed some alcohol. Galvan then returned to the hot beds.

When Galvan left the hot beds for home on Sunday afternoon, he decided to stop at his sister's house on the way. This detour required Galvan to turn left off the highway. While making this turn, Galvan collided with the vehicle carrying appellants.

Immediately after the accident, Galvan was arrested. Thereafter, Robert, Jr., bailed him out of jail. However, Galvan did not return to work for over a year. Galvan served a year in custody for driving under the influence of alcohol. Further, Galvan required more than a year to recover from the injuries he sustained in the accident.

Appellants filed a complaint for personal injuries against Galvan. Although this action did not name Robert, Jr., or Thomas, either individually or doing business as Dallas Brothers Farms, as defendants, appellants took the position that the business automobile liability insurance policy issued by Allied to Dallas Brothers provided coverage. According to appellants, the 1974 pickup truck was covered as a borrowed "auto" that was used by Galvan with the insured's permission.

In response, Allied filed the underlying complaint for declaratory relief. Allied sought a declaration that the subject policy did not provide coverage for appellants' claims against Galvan.

Following a court trial, judgment was entered in favor of Allied. The court first determined that Dallas Brothers borrowed the 1974 pickup truck from Robert, Sr. Thus, the pickup was a potentially insured vehicle under the Allied policy. However, since Galvan was not a named insured, coverage was dependent on his having had permission from Dallas Brothers to use the pickup truck.

It was undisputed that Galvan did not have express permission to drive the truck. Based on Galvan's past use of partnership vehicles and his controversial driving record, the court found that Galvan did not have implied

permission either. Additionally, the court concluded that the necessary permission was not supplied by postaccident conduct. The court was not persuaded that Dallas Brothers ratified Galvan's use of the pickup by re-employing him over a year after the accident.

Finally, the court noted that even if it were to assume that Galvan had implied permission to use the 1974 pickup truck, the policy did not provide coverage. The court concluded that Galvan's conduct, i.e., driving while intoxicated and to visit his sister, exceeded the scope of any implied permission.

## DISCUSSION

In challenging the trial court's ruling, appellants' opening brief focuses on the court's refusal to find that Dallas Brothers' postaccident conduct established Galvan as a permissive user by ratification. According to appellants, the undisputed evidence demonstrates that Dallas Brothers ratified Galvan's use of the 1974 pickup as a matter of law. Therefore, appellants argue, the trial court erred in ruling that the Allied policy did not provide coverage.[1]

To support their position, appellants rely on general agency law. Appellants correctly note that an agent's originally unauthorized act may be ratified by implication where the only reasonable interpretation of the principal's conduct is consistent with approval or adoption. (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 [104 Cal.Rptr. 57, 500 P.2d 1401].) For example, an employer's failure to discharge an employee after learning of the employee's misconduct may be evidence of ratification. (*Murillo v. Rite Stuff Foods, Inc.* (1998) 65 Cal.App.4th 833, 852 [77 Cal.Rptr.2d 12].)

Such ratification has the effect of relating the agent's authority back to the time when the act was performed. (*Rakestraw v. Rodrigues, supra*, 8 Cal.3d at p. 73.) Consequently, liability may be imposed on the principal/employer if it is found to have ratified the otherwise unauthorized misconduct of the agent/employee. (*Coats v. Construction & Gen. Laborers Local No. 185* (1971) 15 Cal.App.3d 908, 914 [93 Cal.Rptr. 639].)

Based on these general principles, appellants contend that Galvan was covered under the Allied policy. According to appellants, the failure of

---

[1]In their reply brief and at oral argument, appellants asserted that the preaccident relationship between Dallas Brothers and Galvan established that Galvan had implied permission to use the pickup to commute to and from the hot beds. However, this argument was not raised in appellants' opening brief. Despite reciting various instances of preaccident conduct, appellants did not challenge the trial court's finding that the evidence was insufficient to demonstrate implied permission. Consequently, this issue will not be considered. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].)

Dallas Brothers to either discipline or discharge Galvan constituted an implied ratification of Galvan's conduct. Since ratification effectively grants retroactive authority, appellants assert that Galvan used the truck with Dallas Brothers' permission.

However, a significant factor distinguishes this case from the authority appellants rely on. Here, a third party is involved. Appellants' position permits a principal (Dallas Brothers) to ratify the agent's (Galvan's) unauthorized conduct and thereby retroactively impose liability on the third party (Allied).

A California court has not directly considered the validity of appellants' argument. However, the Ninth Circuit Court of Appeals was faced with a similar situation in *C. H. Elle Construction Co. v. Western Casualty & Sur. Co.* (9th Cir. 1961) 294 F.2d 459. There, a C. H. Elle Construction Co. employee caused a collision while driving a third party's vehicle without permission, express or implied. A judgment was entered against both C. H. Elle Construction Co. and the employee. C. H. Elle Construction Co. then sought contribution from Western Casualty & Surety Co., the insurer that provided coverage for the vehicle involved. C. H. Elle Construction Co. argued that the vehicle's owner had ratified the unauthorized use of this vehicle.

Applying Idaho law, the *C. H. Elle Construction Co.* court held that the insurer's status of nonliability could not be converted to one of responsibility by the insured's later ratification. In other words, once nonpermitted vehicle use results in an accident, the third party insurance company cannot be rendered retroactively responsible and its existing position changed through ratification of the original unauthorized acts. (*C. H. Elle Construction Co. v. Western Casualty & Sur. Co., supra,* 294 F.2d at p. 463.)

In reaching this decision, the *C. H. Elle Construction Co.* court relied on the early California case of *Taylor v. Robinson* (1859) 14 Cal. 396. In *Taylor* the court noted that although, in general, "ratification relates back to the time of the inception of the transaction, and has a complete retroactive efficacy" (*id.* at pp. 400-401), this doctrine is not universally applicable. Rather, "if third persons acquire rights, after the act is done and before it has received the sanction of the principal, the ratification cannot operate retrospectively, so as to overreach and defeat those rights." (*Id.* at p. 401.)

Secondary authorities also share this opinion. The treatise Couch on Insurance notes that the majority view prohibits ratification of a nonpermitted use after a loss occurs. Further, this is clearly the better position in that

"allowing ratification permits the insured to examine the alternatives after the loss has occurred, which is clearly unfair to the insurer, and has the potential to foster collusion between the insured and the permittee." (8 Couch on Insurance (3d ed. 1997) § 113:13, p. 113-27.)

Since Galvan did not have permission to use the truck at the time of the accident, there is no coverage under the Allied policy. Ratification cannot date back to destroy intervening rights of third persons or otherwise to achieve an inequitable result. (*C. H. Elle Construction Co. v. Western Casualty & Sur. Co., supra,* 294 F.2d at p. 463.)

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Harris, Acting P. J., and Kane, J.,* concurred.

---

*Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.