[Civ. No. 3111. Third Appellate District.—March 9, 1927.]

## PACIFIC BONE, COAL & FERTILIZER COMPANY (a Corporation) Appellant, v. LEA BLEAKMORE et al., Respondents.

[1] APPEAL—RECORD—EVIDENCE—FINDINGS.—Where the testimony is not brought up, the finding of the lower court is conclusive on appeal.

[2] AGENCY — HUSBAND AND WIFE — CONTRACTS — RATIFICATION—EVIDENCE.—In an action to recover the purchase price of fertilizer purchased by the husband in his own name and used on lands owned by his wife, where it was not shown that the wife had any knowledge concerning the purchase by her husband, or that a foreman employed by the wife knew anything about the purchase or conveyed any information to her concerning its purchase, she cannot be held liable therefor, under section 2310 of the Civil Code, on the theory of ratification by accepting or retaining the benefit of the purchase until after the use of the fertilizer had placed it beyond her power to return or restore benefits received.

[3] ID.—AUTHORITY OF AGENT—INFERENCES—EVIDENCE.—In such an action, in order to raise the inference that the foreman of the wife's pear orchard, by reason of his employment, had general authority to purchase and use fertilizer so as to charge her for any act that her foreman might have taken in relation to such use, irrespective of knowledge as to its purchase, it must be shown that the use of fertilizer was in accordance with usual practice in pear culture, and that giving authority to the foreman to purchase and use same was within the contemplation of the wife when employing him.

[4] ID.—RATIFICATION—RESTORATION OF BENEFITS.—There is no ratification if, at the time it becomes known that the agent exceeded his authority, the principal has put it beyond his power to return or restore the benefits received.

---

(1) 4 C. J., p. 535, n. 8. (2) 30 C. J., p. 858, n. 86. (3) 2 C. J., p. 586, n. 27. (4) 2 C. J., p. 493, n. 55, p. 495, n. 62, p. 496, n. 75.

1. See 2 Cal. Jur. 688; 2 R. C. L. 135.
2. See 1 Cal. Jur. 777; 13 R. C. L. 1173.
3. Liability of principal for unauthorized acts of agent, notes, 22 Am. St. Rep. 189; 88 Am. St. Rep. 779. See, also, 1 Cal. Jur. 737; 21 R. C. L. 849, 854, 858.
4. See 21 R. C. L. 932.

APPEAL from a judgment of the Superior Court of Lake County. M. S. Sayre, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lovett K. Fraser and Arthur J. Dannenbaum for Appellant.

Herbert V. Keeling for Respondents.

PLUMMER, J.—Plaintiff had judgment against the defendant Lea Bleakmore, and the defendant Helen Bleakmore had judgment against the plaintiff. Plaintiff thereupon moved the trial court to vacate the judgment in favor of the defendant Helen Bleakmore, and to enter judgment against said defendant in favor of the plaintiff. This motion was denied. From this order and from the judgment in favor of the defendant Helen Bleakmore the plaintiff appeals.

Lea Bleakmore and Helen Bleakmore are husband and wife, residing in Lake County. Helen Bleakmore owns a pear orchard situate in the county of Lake. Her husband, Lea Bleakmore, owns no interest in said orchard. During the times mentioned in these proceedings the orchard was in charge of one Ed Stewart, as foreman, employed and paid by the defendant Helen Bleakmore. Ed Stewart had full charge of the pear orchard in question.

On or about the fourteenth day of March, 1923, the defendant Lea Bleakmore went to Los Angeles and while there purchased from the plaintiff fifteen tons of Lupine No. 1 fertilizer, at the agreed price of $42.50 per ton, and requested that the fertilizer be shipped to Ed Stewart by way of Hopland. At the time of the purchase, the defendant Helen Bleakmore was not present. Lea Bleakmore stated to the plaintiff that the fertilizing material was for his pear orchard. The fertilizer was shipped to Hopland at the request of Lea Bleakmore, and a teamster hired by the said Ed Stewart hauled the fertilizer from Hopland to the pear orchard belonging to Helen Bleakmore. The fertilizer was first dumped in a barn situated on the pear orchard premises, after which fourteen tons of the fertilizer were by the said Ed Stewart, and a workman employed by

him, hauled out and distributed so as to place a portion thereof around each pear tree of the orchard belonging to the defendant Helen Bleakmore. One ton of the fertilizer was left in the barn for over a year and then subsequently used. The expense of hauling and distributing the fertilizer was paid by the defendant Helen Bleakmore in connection with other ranch work performed by the said Ed Stewart and the person employed by him. Whether there was any segregation or specification of the particular time spent in hauling and distributing the fertilizer, or wages charged and paid for such services, does not appear in the transcript. There is nothing in the transcript to show that Helen Bleakmore knew anything about the purchase of the fertilizer in question, nor is there anything in the transcript showing that Lea Bleakmore ever conveyed any information concerning his purchase of the fertilizer or of the manner in which it was purchased to Ed Stewart, the foreman of the defendant Helen Bleakmore. No demand was ever made by the plaintiff upon the defendant Helen Bleakmore for payment until the beginning of this action, nor does the record disclose that Helen Bleakmore ever had any information from any source relative to the purchase and use of the fertilizer until she was joined as a defendant in this action to recover the purchase price thereof.

The record shows that Helen Bleakmore was a resident of the county of Lake, and while the appellant, in his brief, states that Helen Bleakmore resided upon the pear orchard in question, there is nothing in the record before this court upon which such a conclusion can be predicated. The cause is before us upon an appeal upon the judgment-roll, and there is nothing in the findings indicating where Helen Bleakmore resided other than that she was a resident of Lake County.

At the conclusion of the trial, the court made certain findings and it is now urged upon appeal that upon these findings judgment should be ordered against the defendant Helen Bleakmore. The findings referred to are as follows: "VI. That at the time of said purchase by said Lea Bleakmore of said fertilizer, the defendant Helen Bleakmore was not present and it was unknown to plaintiff at the time of sale that said fertilizer was purchased by Lea Bleakmore to be placed around the pear trees owned by defendant Helen

Bleakmore. That said Lea Bleakmore stated that he was purchasing the fertilizer for his pear orchard. That said Lea Bleakmore owned no pear orchard at that time nor since. That more than ninety (90) days have elapsed since the delivery of said fertilizer to Helen Bleakmore's pear ranch. VII. The court finds that Lea Bleakmore purchased fifteen (15) tons of Lupine No. 1 fertilizer at the price of six hundred thirty-seven and 50/100 ($637.50) dollars with instructions to ship said fertilizer to Ed Stewart, at Lakeport, via Hopland. That Ed Stewart was instructed by Lea Bleakmore to place said fertilizer around each pear tree. That said fifteen (15) tons of fertilizer were hauled from Hopland to Helen Bleakmore's barn and dumped in the barn by the teamster. That Ed Stewart, manager for Helen Bleakmore, and Robert Hudson, hired man, thereafter hauled fourteen (14) tons of said fertilizer from Helen Bleakmore's barn and placed it around each of her pear trees in her thirty-acre orchard. That Lea Bleakmore owned no pear orchard and no interest in Helen Bleakmore's orchard. That Helen Bleakmore was not present at the time Lea Bleakmore purchased said fertilizer and said Lea Bleakmore never disclosed to defendant Helen Bleakmore that the fertilizer was to be placed on Helen Bleakmore's pear orchard. That Ed Stewart, Helen Bleakmore's foreman, has full charge over her said pear orchard and defendant Helen Bleakmore gave no instructions in regard to her pear orchard. That defendant Helen Bleakmore paid Ed Stewart and Robert Hudson for the hauling of said fourteen tons of fertilizer from her barn and placing it around her pear trees in connection with other ranch work. That one ton of fertilizer was kept in defendant Helen Bleakmore's barn for one year and then placed around the pear trees in her orchard by her foreman, Ed Stewart, and she paid Ed Stewart for placing the one ton of fertilizer around her pear trees in connection with other ranch work. VII. The court finds that defendant Lea Bleakmore was not authorized at any time to purchase fertilizer from plaintiff for defendant Helen Bleakmore. That defendant Lea Bleakmore did not purchase said fertilizer as an agent for or on behalf of said defendant Helen Bleakmore. That defendant Helen Bleakmore did not purchase any fertilizer from plaintiff." [1] By finding No. 8, all inquiry as to whether

Lea Bleakmore was authorized at any time to purchase fertilizer for the use and benefit of the defendant Helen Bleakmore is foreclosed. The finding of the court is that he was not so authorized and the testimony not being brought up, the finding is conclusive upon this appeal. The finding is also to the effect that Helen Bleakmore did not purchase any fertilizer from the plaintiff. [2] The plaintiff, however, relies upon section 2310 of the Civil Code which reads: "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof." It is upon the latter portion of said section that the appellant relies, to wit: "accepting or retaining the benefit of the act," of the defendant Lea Bleakmore. There is nothing in the record which indicates that the defendant Lea Bleakmore ever claimed or gave to anyone the impression that he was acting for anybody but himself. There is nothing in the record which indicates or tends to indicate that the defendant Lea Bleakmore ever conveyed to the defendant Helen Bleakmore any knowledge or information concerning his purchase of the fertilizer in question. Likewise, there is no finding, nor anything in the record, to indicate that Ed Stewart, the foreman of the defendant Helen Bleakmore, knew anything about how the fertilizer was purchased, or ever said anything to the defendant Helen Bleakmore about the same. It is argued that information to Ed Stewart, the foreman for Helen Bleakmore, constituted knowledge or information on the part of the defendant Helen Bleakmore, but there is nothing in the record, as we have said, showing any information or knowledge on the part of Ed Stewart. The fact that he hauled and distributed the fertilizer is all that appears in the transcript. Furthermore, there is nothing in the record indicating that the use of such fertilizer was or is in accordance with the usual and customary practice prevailing in that or in other localities relating to pear orchard culture and, therefore, there is nothing in the record from which it could be implied or inferred that the foreman had authority to purchase and use such fertilizer, arising from his position as general foreman in charge of the orchard. [3] In order to raise the inference that the foreman, by reason of his employment,

had general authority to purchase and use such fertilizer, and, therefore, that the defendant Helen Bleakmore should be charged for any act that her foreman might have taken in relation to the use of such fertilizer, irrespective of the knowledge as to its purchase, it must be shown that the use of such fertilizer was in accordance with the usual practice in pear culture, and that the giving of authority to the foreman to purchase and use the same was within the contemplation of the defendant Helen Bleakmore, in the employment of Ed Stewart as her foreman. As we have said, the record before us is silent as to all these matters. Again, there is an entire absence of any finding on the part of the court, or of any mention in the record, that the defendant Helen Bleakmore had any knowledge of either the purchase or of the use of the fertilizer in question, before rejection of the use of the fertilizer became impossible.

[4] As stated in 2 C. J., page 496, section 116: "There is no ratification if, at the time it becomes known that the agent exceeded his authority, the principal has put it beyond his power to return or restore the benefits received, or if without his fault conditions are such that he cannot be placed *in statu quo* or repudiate the entire transaction without loss, or if the continued enjoyment of the benefits by the principal is unavoidable." Again, as stated in said section, the rule of ratification by the acceptance of benefits implies the power of agents to accept or reject what has been received.

The finding by the court that the defendant Helen Bleakmore paid for the work of hauling and distributing the fertilizer in connection with other ranch work, if it be assumed therefrom that the defendant Helen Bleakmore then and at that time acquired information or knowledge of the purchase of the fertilizer, shows only the possibility of Helen Bleakmore having acquired such knowledge at a time when rejection of the transaction had become impossible, and, therefore, ratification could not be predicated upon any such assumed acquirement of knowledge. As stated in *Puget Sound Lumber Co.* v. *Krug*, 89 Cal. 237 [26 Pac. 902] (one of the cases relied upon by appellant), "In order to constitute a 'subsequent ratification' of the act by the principal it seems there must be evidence of previous knowledge on the part of the principal of all the material facts

(*McClelland* v. *Whiteley,* 15 Fed. 322; 2 Greenl. Ev., par. 66), and it would seem that a ratification is only effectual when the act is done by a person professedly acting as the agent of the party sought to be charged as principal." In so far as the defendant Lea Bleakmore is concerned, the finding is conclusive that he was not acting as the agent of the defendant Helen Bleakmore, but was acting upon his own individual responsibility. If the plaintiff is to prevail against the defendant Helen Bleakmore the case must rest simply upon the act of her foreman in hauling and distributing the fertilizer, but, as we have shown, there must have been previous knowledge on her part prior to the time when rejection of the benefits on her part became impossible. The case of *Duerr* v. *Sloan,* 40 Cal. App. 653 [181 Pac. 407], cited by appellant to the effect that knowledge on the part of an agent is knowledge on the part of the principal and the fact that an agent fails to communicate certain knowledge to his principal cannot change the rule of law that the knowledge of the agent is imputed to the principal, does not relieve the omission in the findings in this case that the agent of the defendant Helen Bleakmore, if such her foreman, Ed Stewart, may be held, had no knowledge in relation to the purchase of the fertilizer. To carry home to the principal, there must be some showing that the agent of the principal had knowledge. Upon the record before us, we have simply the unauthorized act of the defendant Lea Bleakmore going to Los Angeles and ordering the fertilizer upon his own responsibility without anything in the findings whatever to indicate that he was acting as agent for an undisclosed principal. Were there anything in the findings or in the judgment-roll showing that the defendant Helen Bleakmore was residing upon the pear orchard during the time the fertilizer was being hauled and placed in the barn situate on the premises, and thereafter taken therefrom and distributed around the several trees in the orchard, then and in that case there would be acts and circumstances from which the court could very properly draw the conclusion that the defendant Helen Bleakmore was aware of all the facts, possessed full knowledge of the transaction, and ratified the same. All this, however, is wanting from the record. A portion of it is contained in appellant's brief, but the judgment-roll, including the find-

ings and the judgment, fails to support such contention. That one lives in the same county in which a pear orchard is situated furnishes no basis for holding that one lives on the premises where the pear orchard is situated. In the note appended to section 2310 of the Civil Code, in Kerr's Cyclopedic Codes, is found an unbroken line of authorities holding that knowledge of circumstances and acquiescence with character of unauthorized acts are essential to ratification. Likewise, it is held that means of knowledge, of which the principal has negligently deprived himself, makes him chargeable with knowledge of all provisions of contract entered into by his agent. But, as we have said, it is here that plaintiff has failed. There is no finding that Helen Bleakmore has ever ratified any of the acts referred to, and whether the testimony at the trial was such as to have warranted a finding of ratification is immaterial, as the findings do not support the contentions of the plaintiff and we are bound by the findings. The general rule on the question of knowledge is stated in 2 C. J. 495, section 115: "The mere fact that the principal has received or enjoyed the benefits of the unauthorized act will not amount to a ratification of the agent's acts, if he did so in ignorance of the facts." Conversely, as stated in section 114, same volume, page 493, if the principal with full knowledge of all the facts takes and accepts the benefits, he cannot avoid the burden, that is, he cannot accept the benefits without paying therefor. We may also cite 1 Cal. Jur., section 61 et seq., on the subject of agency dealing with ratification, which supports what we have herein stated on the subject of knowledge, benefits, and the prerequisites necessary to support a finding of ratification.

The authorities are likewise uniform that the mere fact of showing the relationship of husband and wife does not establish the relationship of principal and agent, even though it is also held that less evidence is required in such cases than is ordinarily required. (*Rauer's Law & Col. Co.* v. *Berthiaume,* 21 Cal. App. 670 [132 Pac. 596, 833].) That case also holds that the relationship of principal and agent between husband and wife may be established by circumstantial evidence and so justify a finding to that effect. This, however, does not aid the appellant, as we have no testimony before us. That knowledge must be had by the principal in

time to enable the principal to reject the transaction and escape liability is further held in the case of *Lindow* v. *Cohn,* 5 Cal. App. 388–391 [90 Pac. 485].

Our attention is called to the case of *Gay* v. *Virginia-Carolina Chemical Co.,* 32 Ga. App. 720 [124 S. E. 364], as supporting the contention of the plaintiff, and as being a case involving the purchase and use of a shipment of fertilizer. In that case, however, it appears that the husband in purchasing the fertilizing material had it shipped to his wife, as consignee, and by the husband used upon the land belonging to his wife. Only the syllabus is found in that case. The report of the case itself includes only the words "judgment affirmed." There is no statement of the facts, but it would appear from what is said in the syllabus that the trial court held in that case that the facts established the husband as the agent of his wife, as undisclosed principal, and that the wife had full knowledge of all facts and circumstances from which the conclusion could be drawn that she had ratified either the act of her husband or that he was authorized to so act as her agent in the first instance. In order to justify the conclusion in that case, there must have appeared in the facts what this court, in the case of *Hall* v. *E. W. Wells & Son,* 24 Cal. App. 238 [141 Pac. 53], speaking through Mr. Justice Chipman, has said is essential: " 'The essence of either an election or ratification is that it was done advisedly with full knowledge of the party's rights' (*King* v. *Lagrange,* 50 Cal. 328) ; the party to be charged 'must have fully known what he was doing' (*Brown* v. *Rouse,* 104 Cal. 672 [38 Pac. 507]). We can discover no intention of defendant to ratify the contract relied upon, either in the correspondence or anything that took place between the parties." This applies to the case at bar. We can discover nothing in the findings urged upon us by the appellant showing the requisite previous knowledge establishing either prior authorization or subsequent ratification. While the record shows that the defendant Lea Bleakmore had no pear orchard, there is nothing in the record indicating that he is not financially responsible, or was not financially responsible at the time of the purchase of the fertilizer in question, and amply able to purchase the same on his own responsibility. To raise a contrary inference it must have been shown

that he was wanting in such financial ability. The mere fact that he did not own a pear orchard was and is wholly insufficient.

The judgment and order of the trial court are hereby affirmed.

Finch, P. J., and Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 5, 1927.

Richards, J., Curtis, J., and Preston, J., dissented.