[S.F. No. 22883. In Bank. Sept. 27, 1972.]

JOYCE A. RAKESTRAW, Cross-complainant and Respondent, v. SHERWOOD T. RODRIGUES, Cross-defendant and Appellant.

## COUNSEL

Bronson, Bronson & McKinnon, Charles F. Wilkinson and Paul J. Sanner for Cross-defendant and Appellant.

Nathan Cohn and H. Lee Evans for Cross-complainant and Respondent.

## OPINION

**WRIGHT, C. J.**—Cross-defendant Sherwood T. Rodrigues (Rodrigues) appeals from a judgment upon a jury verdict for $30,000 in favor of cross-complainant Joyce Rakestraw (Joyce). His claimed liability arises out of involvement in a transaction whereby Joyce's name was forged on a promissory note and a deed of trust in order to obtain funds for a business venture of her then husband, William Rakestraw (William), who was also a cross-defendant. We have concluded that as a matter of law the alleged fraudulent acts of Rodrigues in connection with the forgeries were ratified by Joyce and that he was thereby absolved of liability to her.

The action was initiated by Acme Financial Corporation (Acme) and Security Title Insurance Company (Security) to enforce payment of a $75,000 promissory note bearing Joyce's purported signature which in fact had been forged and which was secured by a deed of trust (also forged) covering property owned by her. Joyce, Robert Ellinghouse (Ellinghouse), who affixed the notarial acknowledgment on the deed of trust and Agricultural Insurance Company (Agricultural) as surety on Ellinghouse's bond as a notary public were named defendants. Joyce asserted the forgeries as a defense to the action and cross-complained against Acme, Security, Ellinghouse, Agricultural, Rodrigues and William. Ellinghouse and Agricultural cross-complained against William and Rodrigues.

Joyce entered into a stipulated judgment with Acme and Security by which she agreed to be bound by the note and deed of trust and to dismiss her cross-complaint as against them. Ellinghouse and Agricultural settled the claim against them under Joyce's cross-complaint for $1,000 and stipulated to a nonsuit on their cross-complaint against Rodrigues and William.

Joyce's cross-complaint against the remaining cross-defendants, Rodrigues and William, proceeded to trial and resulted in a jury verdict in her favor. Rodrigues' motion for judgment notwithstanding the verdict was denied as were motions of the two cross-defendants for a new trial. Rodrigues and William appealed from the judgment. Since William's appeal

was dismissed for failure to file an opening brief, we do not discuss the validity of the judgment against him.

In late 1964 Joyce discussed with William the possibility of using her separate improved real property in Woodside as collateral for a loan to provide capital for the operation of a supermarket. On January 28, 1965, Joyce executed but did not deliver a promissory note in the amount of $40,000 and, as security for the obligation, a deed of trust on her Woodside property. Although at that time she expected to obtain a loan, the transaction was never completed. Joyce thereafter withdrew her consent to the use of her Woodside property as collateral. William, however, signed Joyce's name to both a promissory note for $75,000 in favor of Acme and a deed of trust on her Woodside property securing the loan. The signature on the deed of trust was notarized by Ellinghouse on February 18, 1965. Although Rodrigues, an auditor and a close friend and business associate of William, denied any participation in the execution and notarization of the deed of trust, the evidence supports implied findings that he told Ellinghouse he had seen Joyce sign the document and requested Ellinghouse to attest that she had acknowledged the execution of the instrument.[1]

William took the forged documents to Acme and arranged for the loan. A check was drawn by Acme payable to William and Joyce which she endorsed without realizing that she was purportedly liable on the note or that her property had purportedly been encumbered. The major portion of the proceeds of the loan was used to satisfy obligations incurred in connection with a supermarket which was owned and operated by the William Rakestraw Co., Inc. (the corporation).

Joyce concedes that within a few days after she endorsed the check she learned of the forgeries. Later in conversations with her husband and others she claimed that she was the owner of the supermarket since her property had been used as security to finance it. She also demanded that stock in the corporation be issued to her. William, however, refused to issue or transfer any stock to her and initially refused to permit her to take any active role in the operation of the business.

Shortly after the discovery of the forgeries Joyce consulted an attorney who advised her to report the matter to the trustee designated in the deed of trust. Joyce, however, did not follow this advice and sought no remedy until three years later when both the business and her marriage had failed

---

[1]Ellinghouse testified at a deposition that he did not know if Rodrigues told him he saw Joyce sign the deed of trust. At trial, however, he testified in detail as to pressure by Rodrigues to notarize the document.

and the complaint had been filed by Acme and Security.[2] Notwithstanding the position first taken by William he later permitted Joyce to take an active role in the affairs of the corporation during a period of time before its ultimate failure. Although she denied at trial that she managed the business, she did testify that she went to the market "every single day" and she further testified that one of the primary reasons why she did not take more timely action to challenge the forgeries was her belief that she had an equitable interest in the corporation.

Joyce benefited financially through corporate operations made possible by the loan. Approximately $1,000 from an account of the corporation was applied toward a loan previously obtained by Joyce which was also secured by a deed of trust covering her Woodside property, and the corporation paid $3,612.50 in taxes on the parcel. In addition, William's paychecks from the corporation were deposited in a joint account standing in the names of William and Joyce and all payments applied on the Acme loan (totaling $36,250) were made by the corporation.[3] Pursuant to the stipulated judgment Joyce paid Acme the balance of $38,750. The jury impliedly found that she received benefits made possible by the loan in the sum of $8,750 and, accordingly, awarded her $30,000 compensatory damages on her cross-complaint. Rodrigues asserts that because Joyce ratified the forgeries he is relieved from any liability in damages to her.[4] We agree.

■ The issues we deal with involve the application of traditional principles of agency law. Two basic rules are involved: (1) ratification by a person of an act purportedly done on his behalf not only creates the relationship of principal and agent but also constitutes approval by the ratifier of the purported agent's act, relieving such agent of liability to

[2]The complaint was filed on April 11, 1968. No statute of limitations defense has been raised.

[3]At the time Acme made the $75,000 loan it deducted $15,000 prepaid interest, leaving the Rakestraws with $60,000.

[4]The theory of Rodrigues' defense is that by adopting the loan transaction as her own, Joyce not only ratified the unauthorized signings, but also ratified any misrepresentations claimed to have been made by Rodrigues to the extent that they implemented the forgeries. (Cf. *Sou. Bell Tel. & Tel. Co.* v. *WRNO, Inc.* (1950) 216 S.C. 533, 536 [59 S.E.2d 146]: " '. . . a principal who ratifies the unauthorized act of his agent also ratifies his representations and warranties, as well as all other instrumentalities employed by the agent as an inducement to the action of the third person involved in the unauthorized transaction.' 2 C.J.S. Agency, § 66, page 1145.") It is established agency doctrine that ratification of part of a transaction is deemed to be ratification of the whole transaction. (*Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698, 704 [97 Cal.Rptr. 309, 488 P.2d 637]; Civ. Code, § 2311.)

the ratifier for the act; and (2) forgeries can be ratified thereby relieving the wrongdoer agent of liability to the principal.[5]

The first rule is embodied in Civil Code section 2307 which provides: "An agency may be created, and an authority may be conferred, by a precedent authorization *or a subsequent ratification.*" (Italics added.) ■ Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. (*McCracken* v. *City of San Francisco* (1860) 16 Cal. 591, 623-624; *Reusche* v. *California Pac. Title Ins. Co.* (1965) 231 Cal.App.2d 731, 737 [42 Cal.Rptr. 262]; Rest.2d Agency, §§ 82, 83, 100.) ■ A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it." (*Ballard* v. *Nye* (1903) 138 Cal. 588, 597 [72 P. 156]; see also *Bissell* v. *King* (1928) 91 Cal.App. 420, 428 [267 P. 356]; Rest.2d Agency, § 83.) It is essential, however, that the act of adoption be truly voluntary in character. Moreover, there can be no adoption if the act, although voluntary, is done only because the purported principal is obligated to minimize his losses caused by the agent's wrongful act (*Pacific Vinegar etc. Works* v. *Smith* (1907) 152 Cal. 507, 511-512 [93 P. 85]), or because of duress or misrepresentation by the agent (Rest.2d Agency, § 416).

■ Generally, the effect of a ratification is that the authority which is given to the purported agent relates back to the time when he performed the act. (*Ballard* v. *Nye, supra,* 138 Cal. 588, 597; Civ. Code, § 2307; Rest.2d Agency, § 100.) Since he is considered to be an agent with authority at the time he performed the act, he does not incur liability for acts done within the scope of that authority. (*Pacific Vinegar etc. Works* v. *Smith, supra,* 152 Cal. 507.)

■ As to the second rule here involved, it is well settled in California

---

[5]We note, although the issue is not before us, a technical difference in the effect of Joyce's ratification as between William and Rodrigues. Although we do not now so determine it is probable that a principal-agent relationship between Joyce and William pre-dated the unauthorized forgeries, in which event her ratification of such acts would merely relieve the agent of personal responsibility to the principal. In Rodrigues' case, however, Joyce's ratification served first to create an agency where none existed before and then to relieve the agent of personal responsibility to the principal.

"that a principal may ratify the forgery of his signature by his agent (*Volandri* v. *Hlobil* (1959) 170 Cal.App.2d 656, 659-660 [339 P.2d 218]; *Kadota Fig Assn.* v. *Case-Swayne Co.* (1946) 73 Cal.App.2d 815 [167 P.2d 523]); . . ." (*Navrides* v. *Zurich Ins. Co., supra,* 5 Cal.3d 698, 703-704.)[6] ▆ We conclude that the ratification of an act of forgery by one held out to be a principal creates an agency relationship between such person and the purported agent and relieves the agent of civil liability to the principal which otherwise would result from the fact that he acted independently and without authority.[7]

▆ We now turn to the facts of this case. Joyce concedes that she became aware of the forgeries within a few days after she had endorsed the check from Acme and thereafter consulted an attorney in connection therewith. Accordingly, the requirement of knowledge of the material facts essential to voluntary ratification is satisfied. (*Chastain* v. *Belmont* (1954) 43 Cal.2d 45, 58 [271 P.2d 498]; Civ. Code, § 2314.) ▆ The doctrine of exoneration by ratification, however, "is limited, so far as the agent is concerned, to those cases where there remains with the principal, after his first complete knowledge of the transaction, the power to rescind, and failing so to do he is properly charged with full acceptance of all the responsibilities of the contract, even to the exoneration of his agent,

---

[6]Restatement Second, Agency, section 85, comment b, provides in part: ". . . if one impersonates another . . . , or executes or delivers an instrument purportedly signed by another, the rationale of ratification is applicable and the act or transaction can be ratified by affirmance if it does not involve an illegal agreement."

[7]The Uniform Commercial Code as adopted in this state does not purport to deal with our specific issue. Nevertheless it does not dictate a different result. Since the record does not indicate otherwise, we assume for purposes of this discussion that the promissory note involved in the instant case is subject to the provisions of article 3 of the California Uniform Commercial Code.

California Uniform Commercial Code section 3404 provides: "(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value. (2) Any unauthorized signature may be ratified for all purposes of this division. Such ratification does not of itself affect any rights of the person ratifying against the actual signer." Comment 3 of the parent section. Uniform Commercial Code section 3-404, provides in part: "The ratification relieves the actual signer from liability on the signature. It does not of itself relieve him from liability to the person whose name is signed. It does not in any way affect the criminal law . . . [ratification] does not relieve the signer of criminal liability."

If California Uniform Commercial Code section 3404 had affirmatively provided for the rights of the person whose name was signed against the forger, that section would be dispositive as to ratification of the promissory note. However, section 3404 does not deal with the question of ratification as between these parties and specifically leaves the question of the purported agent's civil liability open. By stating that the ratification does not "of itself" affect the forger's civil responsibility, the statutory provision contemplates the application of principles of agency law in this area.

because, with the ability to rescind, if he had rescinded, the transaction would be at an end and nobody would be injured." *(Pacific Vinegar etc. Works* v. *Smith, supra,* 152 Cal. 507, 511-512.) ▓ Here it is clear that Joyce elected not to rescind at a time when she was fully informed and had power to do so and had been advised of her rights.

It was not until three years after discovery of the forgeries, and then only when a complaint was filed against her, that Joyce sought relief. Her conduct during the interim period has been previously set forth and is revealing. When both her marriage and the business failed she formally asserted for the first time a claim for wrongdoing against her former husband and Rodrigues. It thus appears as a matter of law that Joyce affirmatively endorsed the fraudulent acts of William and Rodrigues in anticipation of benefits to be gained, and sought to negate her endorsement thereof only when benefits failed to materialize as anticipated.

Joyce contends that her approval of the transaction and acceptance of benefits was involuntary because at the time she discovered the forgeries she could not rescind the transaction by returning the proceeds of the loan as they had already been expended. There is no merit in this contention. Whether or not she was in a position to return the proceeds of the loan, she could have disavowed the transaction and relieved herself of potential liability by informing Acme and Security of the forgeries. (Cal. U. Com. Code, § 3404, subd. (1).) At the time of discovery she had not ratified the transaction nor had she done anything to preclude her from asserting that the signatures were not hers. Had she then repudiated the forgeries, her failure to take action to force the corporation to make restitution of the proceeds of the loan would not have validated the forged signatures. (See *Pacific Bone etc. Co.* v. *Bleakmore* (1927) 81 Cal.App. 659, 664 [254 P. 618]; *Owens Bottle-Mach. Co.* v. *Kanawha Banking & T. Co.* (4th Cir. 1919) 259 F. 838, 844.)

▓ Joyce also contends that there can be no ratification of Rodrigues' acts since such ratification had to be in writing. Civil Code section 2310, a codification of the "equal dignities" doctrine, provides: "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof." (See also *Moore* v. *Hoar* (1938) 27 Cal.App.2d 269, 279-280 [81 P.2d 226].) Since authorization to bind a principal to a deed of trust must be in writing (Civ. Code, § 2309) and because her consent to or adoption of the fraudulent acts was not in writing, Joyce argues that there has been no valid ratification.

Joyce's liability, however, arises from the promissory note; the deed of trust only secured the note. An agent's authority to execute a promissory note need not be in writing (*Curtin* v. *Salmon River etc. Co.* (1903) 141 Cal. 308 [74 P. 851]) and, accordingly, Joyce's ratification of the note likewise need not have been in writing. Her ratification of the transaction in part, moreover, constituted a ratification of the entire transaction including acts by Rodrigues. (*Navrides* v. *Zurich Ins. Co., supra,* 5 Cal.3d 698, 704; Civ. Code, § 2311.)

Finally, Civil Code section 2310 was not intended to apply to a ratification as between a principal and agent. (See *Sunset-Sternau Food Co.* v. *Bonzi* (1964) 60 Cal.2d 834 [36 Cal.Rptr. 741, 389 P.2d 133].) In *Sunset-Sternau* we held that Civil Code section 2309,[8] requiring that authorization for a contract required in law to be in writing must also be in writing, was not intended to apply as between an agent and principal. The decision's rationale applies with equal force to Civil Code section 2310. That section, therefore, is inapplicable as between the principal and the agent, and thus inapplicable in the present case.

■ As Joyce's ratification of the fraudulent transaction relieved Rodrigues of liability to her as a matter of law, the trial court improperly denied his motion for judgment notwithstanding the verdict. Since that motion should have been granted, we may order that judgment be so entered. (Code Civ. Proc., § 629.) The judgment insofar as it relates to Rodrigues is therefore reversed and the cause remanded with directions to enter judgment in his favor.

McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

---

[8]Civil Code section 2309 provides: "An oral authorization is sufficient for any purpose, except that an authority to enter a contract required by law to be in writing can only be given by an instrument in writing."