613 F.2d 564
 28 UCC Rep.Serv. 722
 EUROPEAN AMERICAN BANK AND TRUST CO., administrating agent
for the Federal Deposit Insurance Corp. as
liquidators of Franklin National Bank,
Plaintiff-Appellant,
v.
STARCRETE INTERNATIONAL IND., INC. et al., Defendants,
Johnston Staples and Judy Staples, Defendants-Appellees,
Albert L. Rogero, Frank Mangano and Robert Hensberry, Defendants.
 No. 78-1183.
 United States Court of Appeals,
Fifth Circuit.
 March 13, 1980.
 
 William P. O'Malley, Clearwater, Fla., for European American Bank and Trust Co.
 Aubrey O. Dicus, Jr., St. Petersburg, Fla., for Johnston Staples and Judy Staples.
 Appeal from the United States District Court for the Middle District of Florida.
 Before TUTTLE, BROWN and TATE, Circuit Judges.
 TATE, Circuit Judge:
 
 
 1
 The issue of this appeal concerns the liability of the defendants Johnston Staples and his wife Judy. They are each sued upon a written guaranty to which their names were forged. The plaintiff (the liquidator of an insolvent bank to which the obligation secured by the guaranty had been assigned) appeals from directed-verdict dismissal of its claim. We affirm.
 
 
 2
 The narrow issue before us concerns the alleged liability of the Stapleses by virtue of Fla.Stats. § 673.3-404 (1965)[1], taken verbatim from section 3-404 of the Uniform Commercial Code. This is the only basis for liability urged[2]. The plaintiff-appellant contends that, by virtue of 3-404, the Stapleses are liable because they had learned of the forgeries but did not repudiate them prior to suit. We ultimately hold that 3-404 liability is not applicable, because neither the guaranty nor the underlying lease obligation are the type of commercial paper (negotiable instruments as defined by Fla.Stats. § 673.3-104, UCC § 3-104) regulated by the provisions of Chapter 673 of the Florida statutes, § 673.3-101 (short title: "Uniform Commercial Code Commercial Paper"), UCC § 3-101, in which 3-404 is found.
 
 The Facts
 
 3
 The obligation allegedly guaranteed by the Stapleses was an equipment lease of January, 1974 by Starcrete, a corporation of which the husband was a stockholder and director. The equipment lease and the guaranty agreements were all executed in Florida, the situs of the equipment and state of domicile of Starcrete and the guarantors.
 
 
 4
 The equipment lease was part of a financial arrangement by which Starcrete (a) sold to lessors the equipment for some two hundred thousand dollars and (b) then leased it back from them for lease rentals amounting to over three hundred thousand dollars, payable monthly over five years (c) with the lease to be assigned by the lessors to the (later insolvent) Franklin National Bank in consideration of the payment of the two hundred-odd thousand dollars (which was then to be paid to Starcrete by the lessors). Seven individual names (including those of the two Stapleses) are signed to the guaranties of the equipment lease obligation, which were executed in January 1974, at the time of or soon after execution of the equipment lease.
 
 
 5
 The lease was assigned to the bank in March, 1974. In September, 1974, the bank wrote Starcrete and the seven guarantors to inform them that, due to default, it elected to accelerate the full balance of over three hundred thousand dollars due for the lease rentals.
 
 
 6
 Most favorably to the plaintiff-appellant[3], the evidence at best shows that Johnston Staples, the husband, knew or should have known that his signature was forged in March, 1974 (and his wife no earlier, if not much later), when the proceeds from the bank loan were received by Starcrete. This is based upon the supposition that, since in January the directors had allegedly been informed that the bank would not advance the money on the equipment lease unless all Starcrete directors signed the guaranty[4], Staples must have realized that his signature had been forged. Nevertheless, he allegedly kept silent, because the guarantors were to be given stock advantages if the company prospered because of the infusion of capital represented by the financing arrangement.
 
 
 7
 We emphasize, however, that the bank had already advanced the money by the time that Staples and his wife allegedly learned that their signatures had been forged to the guaranty.
 
 The Issue
 
 8
 The plaintiff-appellant argues that, although their signatures on the guaranty were forged, the Stapleses are nevertheless liable because they learned of the forgery but did not repudiate their signatures, wishing to retain any benefits that might accrue. Conceding that no estoppel (detrimental reliance, see footnote 2) is shown, the plaintiff-appellant contends for liability solely on the basis of Fla.Stats. § 673.3-404, UCC § 3-404 (quoted in footnote 1).
 
 Section 3-404
 
 9
 An "unauthorized signature" is code-defined as "one made without actual, implied or apparent authority and includes a forgery." Fla.Stats. § 671.1-201(43), UCC § 1-201(43). In substance, section 3-404 permits the unauthorized signature to bind the person whose name is signed in favor of anyone who in good faith and for value takes "The instrument " (as defined), where the person whose name is signed "ratifies" the unauthorized signature or "is precluded from denying" it. For purposes of this section, a person may ratify his unauthorized signature if he knowingly assents to it by express statement or conduct (such as retaining benefits accruing from the signature), and he may be precluded from denying it not only by estoppel but also by negligence in permitting or failing to disavow it. 2 Anderson, Uniform Commercial Code §§ 3-404.4-.7 (1971); White and Summers, Uniform Commercial Code 402 (1972); UCC Official Code Comment § 3-404, quoted at 2 White, pp. 919-920.
 
 
 10
 By reason of the ratification or preclusion, the person whose name was signed is bound by the "instrument" just as if he had signed it personally, in favor of one who in good faith has paid or taken the instrument for value. Id. This full liability of the signed person on the instrument itself, under these circumstances, is a change made by the Uniform Commercial Code from principles formerly applicable. UCC Official Code Comment, § 3-404.
 
 
 11
 This exceptional liability of 3-404 upon an instrument itself based solely upon ratification of an unauthorized signature is limited by the section (see footnote 1) to the purposes of the chapter of which it forms a part, Fla.Stat. Chapter 673, UCC Article 3, which relates to commercial papers. The "Instrument " upon which liability may be so enforced is restricted to negotiable instruments as defined by the chapter (UCC article 3), chiefly drafts, checks, certificates of deposit, or notes, Fla.Stats. §§ 673.3-102(1) (e), 673.3-104, UCC §§ 3-102(1)(e), 3-104. See: UCC Official Code Comment § 3-103; 2 Anderson, Uniform Commercial Code § 3-104:3-5 (1971); White and Summers, Uniform Commercial Code 397-98, 459-65 (1972). The obvious purpose is to enhance negotiability of this type of narrowly defined commercial paper, with its unique legal liabilities, by affording this additional protection to good faith acquirers thereof.
 
 Non-Application of 3-404 to Present Facts
 
 12
 Neither the equipment lease nor the guaranty are negotiable instruments as defined by 3-104, and the plaintiff does not contend otherwise. The decisions cited by the plaintiff concerning liability for forged or unauthorized signatures upon negotiable instruments are thus inapplicable[5], unless (as contended by the plaintiff) the liability of 3-404 applies to unauthorized signatures in transactions regulated by other articles of the Uniform Commercial Code.
 
 
 13
 The substance of the plaintiff's argument in this regard is that the signature and unauthorized signature sections of UCC Article 3 (Fla.Stats. Chapter 673) apply to transactions regulated by other articles of the Code, which otherwise do not contain provisions regulating these matters.[6] This argument must be rejected as contrary to the express language of the Article 3 sections that they apply Only to Article 3 negotiable instruments (see references in footnote 6).
 
 
 14
 The argument apparently proceeds on the erroneous assumption that unintended lacunae in the Code result from the failure to apply the Article 3 signature provisions to transactions regulated by the other articles. This overlooks the Code provision that "(u)nless displaced by the particular provisions of this code, the principles of law and equity . . . shall supplement its provisions." Fla.Stats. § 671.1-103, UCC § 1-103. See also 1 Anderson, Uniform Commercial Code 5-7 (1972). Thus, as here, where the transaction is not within the compass of any provision of the Code, issues relating to it are determined by the statutes and common law of the applicable state and, as indicated earlier (see footnote 2), Florida law affords the plaintiff no remedy under the circumstances here presented.
 
 
 15
 Even had the excluded depositions been admitted in evidence, (see footnote 3), there was no evidence from which the jury could conclude liability on the part of the Stapleses resulting from their forged signatures on the guaranty. Consequently no reversible error is presented by the district court's dismissal of the plaintiff's suit against them.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Fla.Stats. § 673.3-404 Unauthorized signatures
 "(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.
 "(2) Any unauthorized signature may be ratified for all purposes of this Chapter. Such ratification does not of itself affect any rights of the person ratifying against the actual signer." (Italics ours.)
 (Clause 23 of the equipment lease provided that the agreement was to be governed by and construed in accordance with New York law. Since NY UCC § 3-404 is identical with the Florida and the UCC source provisions, it is unnecessary to discuss what effect, if any, this choice-of-law provision might have had on the liability of those who signed separate instruments guaranteeing payment of the lease rentals.)
 
 
 [2]
 No issue of estoppel (detrimental reliance by the obligee) arises under state law because the Stapleses did not learn of the forgeries until after execution of the instruments creating and assigning to the bank the defaulted obligation, an equipment lease which allegedly had been guaranteed by them
 
 
 [3]
 The other issue in this appeal concerns the district court's alleged error in holding two depositions inadmissible. For purposes of deciding whether a jury issue was raised (which would preclude the directed verdict in favor of the Stapleses), we are assuming the trial court erred in refusing to admit the depositions, and we consider the facts contained in these depositions insofar as favorable to the plaintiff-appellant's position on the merits i. e., that the Stapleses' 3-404 liability should have been submitted to the jury
 
 
 [4]
 In fact, aside from Staples, at least two of the corporation's directors at the time (Theodora Brady and Lee Scargone, App. 31, 35) did not sign the guaranty
 
 
 [5]
 Perini Corp. v. First Nat. Bank of Habersham County, 553 F.2d 398 (5th Cir. 1977); Swiss Credit Bank v. Chemical Bank, 422 F.Supp. 1305 (S.D.N.Y.1976); Rakestraw v. Rodrigues, 8 Cal.3d 67, 104 Cal.Rptr. 57, 500 P.2d 1401 (1972); Common Wealth Insurance Systems, Inc. v. Kersten, 40 Cal.App.3d 1014, 115 Cal.Rptr. 653 (1974)
 The other decision cited, North Carolina Nat. Bank v. Wallens, 31 N.C.App. 721, 230 S.E.2d 690 (1976), concerns liability upon a guaranty for all debts of a partnership, where the note sued upon was, on its face, signed only by a partner individually. The case was remanded to permit the plaintiff to prove that the note represented a debt of the partnership, as authorized or ratified by the other partners. We do not find the decision apposite to the issue before us.
 
 
 [6]
 The plaintiff's argument first posits that the guaranty agreement, being ancillary to the equipment lease, is regulated as is the lease by principles of UCC Article 9 (Fla.Stats. Chapter 679) relating to security interests in personal property and fixtures. The argument then proceeds that, since Article 9 does not define "signature" but it does incorporate by reference Article 1's definition of "unauthorized signature," the Code must have intended Article 3's definition of a signature, UCC § 3-401, (in definitions specified as applying to "This Article") and of the consequences of an unauthorized signature, UCC § 3-404 (applicable by Code definitions only to negotiable instruments regulated by Article 3), to apply also in the transactions requiring signatures that are regulated by other articles of the Code, such as Article 9