In re SOUTHERN INDUSTRIAL BANKING CORPORATION, d/b/a Daveco, Debtor.

Irwin A. DEUTSCHER, Trustee, Plaintiff,

v.

Gary LONG, Defendant.

Bankruptcy No. 3–83–00372.
Adv. No. 3–83–0507.

United States Bankruptcy Court, E.D. Tennessee.

March 7, 1984.

---

Robert M. Bailey, Knoxville, Tenn., for plaintiff.

Norman B. Jackson, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is, first, whether a signature on a promissory note attributed to defendant is genuine and, secondly, if forged, whether defendant ratified the forgery by failing to take steps to either renounce an interest in or convey out of his name certain shares of stock after learning that the stock had been purchased in his name, without his knowledge, with proceeds of a loan made pursuant to the note. Tenn.Code Ann. § 47–3–404 (1979).

### I

The debtor filed its petition for reorganization under chapter 11 of the Bankruptcy Code on March 10, 1983. On May 27, 1983, the trustee initiated this action to recover $20,300.00, plus interest and attorneys' fees, on a promissory note. Defendant denies that the signature on the note is his signature or that the note was signed at his authorization.

The promissory note in debtor's possession bears the signature "Gary Long" and appears on its face to have been executed on December 30, 1982. On the same date a check for $20,000.00 was issued by debtor to defendant. The check was cashed the same day and bears the following typewritten endorsement: "Cashed to purchase/City & County Bank of Knox/County/Common Stock/Per agency agreemnt [sic]." This endorsement includes the stamp of City and County Bank of Knox County, but the defendant's signature does not appear on the endorsement.

Additional documents pertinent to the transaction were produced from records in the possession of the Federal Deposit Insurance Corporation, as receiver for the City and County Bank of Anderson County. These included a promissory note to City and County Bank of Anderson County for $80,000.00, dated December 30, 1982, and bearing the signature "Gary Long," as well as an $80,000.00 check from City and County Bank of Anderson County payable to Gary Long. The check was one of a series

of at least six checks for $80,000.00 each, written to various individuals on December 30, 1982. This check also bore an endorsement indicating it had been cashed, pursuant to an agency agreement, to purchase stock in the City and County Bank of Knox County. Also included among the documents was a stock certificate dated December 30, 1982, and indicating the issuance to defendant of 7,500 shares of common stock in City and County Bank of Knoxville. According to the terms of the $80,000.00 promissory note, the 7,500 shares were retained as collateral in the vault of the City and County Bank of Anderson County.

The focus of this action is, of course, upon the $20,300.00 promissory note to the debtor. Demand for payment of the note was mailed to defendant on May 16, 1983. Defendant denied any knowledge of the note prior to reading a newspaper story mentioning the debt after the debtor filed bankruptcy. Defendant also denied receipt of either the $20,000.00 check or the stock certificate for the 7,500 shares. The stock book stub for the certificate bears no signature acknowledging receipt. He also denied knowledge of or involvement in the preparation of the $80,000.00 promissory note and the other documents related to the transaction.

Upon learning of the existence of the note, defendant called the debtor's president, indicated his lack of involvement in or awareness of the transaction, and requested information concerning it. Defendant denied that any information was forthcoming.

Defendant acknowledged a history of some previous transactions with both the debtor and City and County Bank of Knox County. As a part owner of a business related to the 1982 World's Fair he had submitted a personal financial statement to the debtor in May 1982 and negotiated a loan for the purchase of furniture. He purchased preferred stock in the City and County Bank of Knoxville, financing the purchase through a financial institution other than the debtor.

Various documents submitted by the defendant relative to these and other past transactions bore a signature visibly different from the signature on the promissory note. Aside from differences in the penmanship itself, the signature on the note also omitted the middle initial "F," characteristically included in the signatures acknowledged by defendant.

The bookkeeper who prepared the $20,000.00 check did so upon instructions from the debtor's president, James Steiner. Asserting the Fifth Amendment privilege against self-incrimination, Steiner declined to provide testimony pertaining to the issuance of the check.

Defendant's secretary, who received all mail in his office, denied receiving any communications by mail evidencing ownership of the 7,500 shares of common stock. Debtor produced no contrary evidence of any such communications to defendant. The shares of common stock were indisputably issued in defendant's name, and he was unquestionably listed as a shareholder on the corporation books.

No evidence was presented as to the worth or lack of worth of the stock after defendant became aware of the forgery. The court is aware, and takes judicial notice, that the City and County Bank of Knox County was declared insolvent and closed by state regulators on May 27, 1983, a little more than ten days after debtor sent its demand to defendant for payment of the note.

The parties stipulated that Linton Godown, a handwriting expert, examined the relevant documents and concluded that the signatures on both the $20,000.00 and $80,000.00 promissory notes were not those of defendant.

## II

The trustee contends first that he has carried his burden of proof as to the genuineness of the signature on the note. Tenn. Code Ann. § 47–3–307 (1979). Alternatively, he maintains that, assuming the signature was forged, defendant ratified the forgery by retaining the shares of stock after

learning of the forgery. Tenn.Code Ann. § 47–3–404 (1979).

Defendant contends that he retained no benefit from the transaction because the bank was closed by regulators, rendering the stock worthless. Defendant also maintains that merely passive behavior is insufficient to support a finding of ratification, contending that ratification of a forgery requires either an affirmative action or a prejudicial failure to take affirmative action to deny the forgery.

Debtor has failed to satisfy its burden of proof as to the genuineness of the signature. The statute provides:

> *Burden of establishing signatures, defenses and due course.*—(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue:
>
> > (a) the burden of establishing it is on the party claiming under the signature; but
> >
> > (b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required. . . .

Tenn.Code Ann. § 47–3–307 (1979).

The comment to this section provides further:

> The question of the burden of establishing the signature arises only when it has been put in issue by specific denial . . . . The burden is on the party claiming under the signature, but he is aided by the presumption that it is genuine or authorized stated in paragraph (b). . . . It means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic. The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of the defendant or more accessible to him. He is therefore required to make some sufficient showing of the grounds for his denial before the plaintiff is put to his proof. His evidence need not be sufficient to require a directed verdict in his favor, but it must be enough to support his denial by permitting a finding in his favor. Until he introduces such evidence the presumption requires a finding for the plaintiff. Once such evidence is introduced the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff.

Tenn.Code Ann. § 47–3–307 comment 1 (1979).

Under the statutory definition, " '[b]urden of establishing a fact' means the burden of persuading the triers of fact that the existence of the fact is more probable than its non-existence." Tenn.Code Ann. § 47–1–201(8) (1979).

■ From the evidence presented the court is not persuaded that it is more probable than not that the signature is genuine. The evidence presented—both as to the stipulated conclusions of the handwriting expert and as to the marked differences between the penmanship of the signature and that of signatures acknowledged by defendant—effectively rebuts the statutory presumption of genuineness. The trustee introduced no countervailing evidence to warrant a finding of genuineness, and the court must conclude that he has failed to meet his burden of proof on this issue.

■ Nor is the court persuaded that defendant may be said to have ratified the forged signature by his conduct. The statute provides:

> *Unauthorized signatures.*—(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.
>
> (2) Any unauthorized signature may be ratified for all purposes of this chapter. Such ratification does not of itself affect

any rights of the person ratifying against the actual signer.

Tenn.Code Ann. § 47–3–404 (1979).

The comment to this section elaborates: A forged signature may at least be adopted; and the word "ratified" is used in order to make it clear that the adoption is retroactive, and that it may be found from conduct as well as from express statements. Thus it may be found from the retention of benefits received in the transaction with knowledge of the unauthorized signature. . . .

Tenn.Code Ann. § 47–3–404 comment 3 (1979).

Restatement (Second) of Agency § 82 (1958) defines "ratification" as follows:

[T]he affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

The Restatement defines "affirmance" as either of the following:

(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or

(b) conduct by him justifiable only if there were such an election.

Restatement (Second) of Agency § 83 (1958).

Thus, even if an individual repudiates the unauthorized act and disclaims an intent to affirm, his retention of something to which he would not be entitled unless the unauthorized act were affirmed may constitute a ratification of the act. Restatement (Second) of Agency § 83 comment c. (1958); Restatement (Second) of Agency § 99 (1958).

Defendant contends that he retained no benefit because closure of the bank by regulators rendered the stock worthless. No proof was submitted as to the stock's worth or lack of worth. The term "benefit" is, of course, not limited to a pecuniary gain, but means that the recipient has "acquired some legal right to which he would not

otherwise have been entitled." *Black's Law Dictionary* 143 (rev. 5th ed. 1979). Stock ownership comprises certain specific legal rights such as the right to participate in management, in surplus profits, and, upon dissolution, in any assets remaining after the payment of corporate debts. 11 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5083 (rev. perm. ed. 1971). Presumably, the trustee would argue that ownership of the stock entitled defendant to these legal rights per se, without regard to whether the rights could be actually exercised to defendant's pecuniary gain.

Whether ownership of the stock can be said under these circumstances to be a "benefit" need not, however, be decided. Rather, the critical inquiry is, even assuming that ownership of the stock constituted a benefit, whether defendant's conduct was such that he may be said to have retained that benefit. "Retain" means "to hold or continue to hold in *possession* or *use.*" *Webster's New Collegiate Dictionary* 723 (2nd ed. 1960) (emphasis added). Defendant never had or retained possession of the stock certificate evidencing the issuance in his name of the 7,500 shares. The certificate is, of course, not the stock itself but is merely evidence of ownership and of the holder's set of rights as a stockholder. 11 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5092 (rev. perm. ed. 1971); *Young v. South Tredegar Iron Co.,* 85 Tenn. 189, 2 S.W. 202 (1886). However, the defendant did not attempt to assert or exercise any of those rights evidenced by the certificate. He never exercised a corporate vote, never received or asserted a right to dividends, and never received or claimed a right to corporate assets. In short, defendant never possessed nor retained the tangible document evidencing rights of ownership in the stock, nor did he ever attempt to assert or exercise those rights. It cannot be said that defendant continued to actually hold in his possession or, more importantly, to avail himself of the use of this property.

Those cases in which a retention of the benefit of a transaction has been held to

constitute a ratification of a forgery involve acts by which the ratifier affirmatively took advantage of the transaction and intentionally availed himself of its benefits. The clearest case is where the purported ratifier has simply accepted and kept the proceeds of the forged instrument. For example, in *Starkey Construction, Inc. v. Elcon, Inc.,* 248 Ark. 958, 457 S.W.2d 509, 7 U.C.C.Rep. 923 (1970) the unauthorized endorsements of checks for progress payments made payable jointly to a subcontractor and materialmen were deemed ratified by the materialmen whose names were forged when they accepted from the subcontractor payments due them from the check proceeds.

Even less clear-cut cases not involving direct acceptance and retention of proceeds have involved unequivocal acts by which the ratifier has affirmatively taken advantage of the transaction. For example, in *Rakestraw v. Rodrigues,* 8 Cal.3d 67, 104 Cal.Rptr. 57, 500 P.2d 1401, 11 U.C.C.Rep. 780 (1972), a husband forged his wife's signature on a promissory note to obtain financing for construction of a supermarket. When the wife learned of the forgery a few days later, she did not repudiate. Instead, over the course of the next three years she repeatedly claimed an interest in the supermarket, participated in its operation and further benefited by the application of corporate funds to a personal debt. She disavowed the transaction only after both her marriage and the supermarket failed. Her affirmative endorsement of the forgery was deemed a ratification.

Similar conduct occurred in *Common Wealth Insurance Systems, Inc. v. Kersten,* 40 Cal.App.3d 1014, 115 Cal.Rptr. 653, 15 U.C.C.Rep. 133 (1974), a case cited and relied upon by the trustee. In *Kersten* a principal shareholder's signature was forged on a corporate note. After learning of the forgery, he failed to repudiate the signature. He then affirmatively availed himself of the benefit of the transaction by drawing a salary made possible by the loan and by repaying to himself a loan he had previously made to the corporation. He delayed making the forgery known in order to avoid casting suspicion on other shareholders, and he assured the payee that he was making an effort to bring the account current. Only when he became convinced that the corporation was hopelessly insolvent did he repudiate the signature. Those affirmative acts, by which he took advantage of the transaction and intentionally availed himself of its benefits, were deemed a ratification.

The Restatement (Second) of Agency sets forth the types of actions which constitute a retention of benefits:

> [T]here is a wrongful retention if, without mistake of fact, the principal uses the things, destroys them, refuses on demand to return them to the person entitled to them, or if, knowing such person is ignorant of the lack of authority of the agent, he retains them for an unreasonable length of time without offering to surrender them if the other will surrender things of the principal given in exchange.

Restatement (Second) of Agency § 99 comment b. (1958).

Defendant's conduct forms a decided contrast to the conduct specified by the Restatement and to the conduct found in *Rakestraw* and *Kersten.* In the instant case, upon learning of the forgery defendant immediately repudiated the signature and the transaction. He did not have or hold the certificate evidencing ownership of the stock; he did not assert or exercise any ownership rights. He did not use, destroy, or refuse upon demand to return the property. He did not fail to tender surrender of the stock knowing that debtor was ignorant of the forgery; indeed, he immediately advised debtor that the signature was unauthorized. At most, he failed to initiate steps, without any demand therefor by the debtor or the trustee, to convey to debtor or the trustee any rights which he may have had and to specifically request that he be removed from the list of shareholders. This is understandable in light of his apparent belief that he had no valid interest in the stock and in light of the parties' apparently

mutual assumption that the stock had become worthless.

Something more than this is required for ratification. There must be at least some affirmative act by which the defendant took advantage of the transaction and availed himself of its benefits. Such conduct is lacking here. Defendant's conduct regarding the forged note is not "'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.'" *Rakestraw* 8 Cal.3d at 73, 104 Cal.Rptr. at 61, 500 P.2d at 1405, at 11 U.C.C.Rep. 784. Rather, it is entirely consistent with an intent to repudiate and to disavow any interest or benefit from the transaction. Defendant did not ratify his forged signature under these facts.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.